M. M. DOUGLASS ET AL V. TEXAS-CANADIAN OIL CORPORATION.

No. 8105. Decided October 20, 1943.
(174 S. W., 2d Series, 730.)

*Robert M. Vaughn,* of Dallas, for petitioners.

It was error for the court to hold that the draft attached to the lease was not sufficient memorandum in writing to show any agreement made by the oil company to purchase the oil and gas lease. Longinotti v. McShane, 184 S. W. 598; Purtell v. Bell, 200 S. W. 644; 27 C. J. 259-263.

*Weeks, Hankerson & Surles* and *Russell Surles,* of Tyler, for respondents.

The draft drawn by the defendant's alleged agent which recited a consideration "for 37.1 acres of land" with the limitation that it was "subject to full lease on 74.2 acre lease" was an executory contract and insufficient as a memorandum of the oral agreement of respondent to purchase the oil and gas lease within the statute of frauds. Robertson v. Melton, 115 S. W. (2d) 624; Little v. Childress, 17 S. W. (2d) 786; Sibley v. Southland Life Ins. Co., 36·S. W. (2d) 145.

MR. JUDGE BREWSTER, of the Commission of Appeals, delivered the opinion for the Court.

Petitioners, M. M. Douglass and Jas. D. O'Connor, sued respondent, Texas-Canadian Oil Corporation, for actual and exemplary damages for its alleged breach of an agreement to pay them $1,855.00, for an oil, gas and mineral lease on certain land in Wood County. Respondent filed a number of exceptions to their petition on the ground that the contract was in violation of the statute of Frauds, subdiv. 4, Art. 3995, R. S. 1925. The trial court sustained the exceptions and dismissed the case after petitioners refused to amend. That judgment was affirmed by the Court of Civil Appeals. 169 S. W. (2d) 198.

In its relation to the questions for decision here, the petition alleged that after considerable negotiations in Dallas between petitioners and one McGahhey, respondent's agent, they executed the lease covering an undivided one half interest in the west 37.1 acres of a described tract of 74.2 acres; that it was agreed that the lease was to be forwarded, with a draft for $1,855.00 drawn by respondent's agent, for delivery to respondent upon payment of the draft to petitioners' order at a Tyler bank; that the lease and draft were forwarded to the bank but that respondent, after intentionally delaying the matter a few days pending completion of a well then being drilled on adjoining acreage, refused to pay the draft because the well proved to be a dry hole.

The lease, duly executed and acknowledged by petitioners on March 8, 1941, for a recited consideration of $10.00 cash, was the "Producers 88 Special Revised" form and sufficiently described the land. The draft was as follows:

"CUSTOMER'S DRAFT

Subject to full lease on 74.2 ac Lease.
First National Bank in Dallas 32-1
Dallas, Texas March 8, 1941

Pay to the Order of
M. M. Douglass and Jas D. O'Connor $1,855.00
For 37.1 acres of land in Wood County, Texas
Value Received and Charge the same to Account
of
To Texas-Canadian Oil Corporation )
Tyler State Bank & Trust Co. )  A. C. McGahhey."

■ The draft alone cannot be regarded as a sufficient memorandum in writing signed by respondent's agent to remove the bar of the Statute of Frauds because, without the aid of parol evidence, it is too indefinite as to what the $1,855.00 was being paid for. See Cantrell v. Gerrard (Com. App.) 240 S. W., 533;

Smith v. Sorelle, 126 Texas, 353, 87 S. W. (2d), 703; Taber v. Pettus Oil & Refining Co., 139 Texas, 395, 162 S. W. (2d), 959; and the authorities there cited.

However, the application for writ of error was granted with this notation: "We are inclined to the view that the draft taken in connection with the attached lease contract was a sufficient memorandum to satisfy the provisions of Subdiv. 4, Art. 3995." We are not now of that view.

■ A mere physical connection between two or more instruments is not enough to warrant their consideration together to to make one of them sufficient as a memorandum under the statute. Before the memorandum can thus be supplemented, both it and the physically connected instrument must show on their faces, either by express reference to each other or by reference to the same subject matter, their connection one with the other. Otherwise, the memorandum would, in effect, be partly oral, which cannot be. Page on Contracts (2d Ed.) Vol. 2, Sec. 1321, pp. 2284, 2285. As stated by another authority, "Oral evidence can only bring together the different writings. It cannot connect them. They must show their connection by their own contents. The connection must be apparent from a comparison of the writings themselves." 25 R. C. L., p. 680, sec. 318. For example, where a check attached to a contract was sought to be invoked as a memorandum to satisfy the statute by resort to the recitations of the contract, the Supreme Court of Alabama said that the physical attachment of the instruments was not sufficient to warrant such reference to the contract because there was nothing on the face of the check "that shows it was given in part payment for the particular lands described in the alleged contract. It is true, it does contain the words, 'part payment on coal lands,' but what lands are there referred to would have to be ascertained by resort to parol evidence which, of course, could not be done." Thompson v. New South Coal Co., 34 So., 31. In the present case the lease to which reference is sought to be made covers an undivided one half interest in the west 37.1 acres of a tract 74.2 acres out of the Hamby Survey, which it describes by metes and bounds. The draft says it is "for 37.1 acres of land in Wood County, Texas." It is for 37.1 acres from the Hamby Survey, only an undivided one half of which is covered by the lease, or is it for some other land in Wood County? Is it for the fee or for a mineral lease? Why is the draft for $1,855.00 while the lease is executed for only $10.00? These questions cannot be answered by reference to either instrument. So material matters missing in one are

not supplied by the other. They can be established only by parol evidence, which is permitted, would introduce all the mischiefs which the Statute of Frauds aims to prevent. Manifestly, therefore, petitioners' alleged cause of action cannot be salvaged by the rule stated in 37 C. J. S., p. 662, sec. 178 c, that "two writings may be considered together where there is both a physical connection or union and a direct reference, or where one is indorsed on, or. attached to, the paper containing the other and directly refers thereto." Here there is no such internal reference by the draft to the lease, either as to subject matter or otherwise, as would constitute the former a sufficient memorandum to save the transaction from the operation of the statute.

Petitioners urge that Art. 4004, R. S., 1925, passed in 1919, is in conflict with subdiv. 4, Art. 3995, supra, and that, since their suit invokes the former statute, the latter has no application to their cause of action. As the latter statute was enacted in 1840, their proposition would be sound, provided there were any such conflict. But there is none. Art. 4004 simply defines actionable fraud and prescribes the measure of damages with regard to transactions in real estate (and stocks) which amount to a contract. It clearly presupposes that the parties have made an enforceable contract. Therefore, it can have no reference to promises or agreements upon which no action may be brought, under Art. 3995, the terms of which are presumed to be known to every person attempting to contract with respect to the sale of real estate. The point is overruled.

We think the Court of Civil Appeals reached the correct conclusion with respect to petitioners' contention that the transaction is saved from the operation of the statute because they had performed the agreement, hence no good purpose would be served by writing further on it.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court October 20, 1943.