Charles H. FOSTER et al., Appellants,

v.

Dennis S. WAGNER, Appellee.

No. 5392.

Court of Civil Appeals of Texas.

El Paso.

June 22, 1960.

Rehearing Denied July 20, 1960.

Mayfield, Broaddus & Goodman, El Paso, for appellants.

Edwards, Belk, Hunter & Kerr, El Paso, for appellee.

LANGDON, Chief Justice.

This suit was brought by appellee Dennis S. Wagner, a licensed real estate dealer, against appellants Charles H. Foster, Jack C. Dautrich, William A. Cardon, Jr., Ansel G. Brown, Joe Hanawalt, Dautrich Real Estate Company, a corporation, and Newster Company, a corporation.

The cause of action alleged by Wagner is for damages, (1) against Charles H. Fos-ter for breach of a written listing agreement between Foster and Wagner, dated October 13, 1956; and, (2), against all defendants, including Foster and the Newster Company, for wrongfully inducing a breach of the contract.

On a trial to the jury, special issues were submitted solely upon questions of actual damages for breach of the contract; conspiracy, malice and exemplary damages, resulting in jury findings of $4,000 actual damages and $15,000 exemplary damages. Defendants' motions for judgment non obstante, to disregard the jury findings and for a new trial, were overruled. The trial court entered judgment in accordance with the jury findings, but made a specific finding that only Charles H. Foster was bound under the listing. All prerequisites to appeal have been complied with, and this case is properly before us.

Appellants have brought twenty-nine assignments of error, which have been grouped, for purposes of argument, into eight groups.

We believe, however, that the principal question presented by this appeal involves the legal construction of the listing agreement which was the basis of this suit. Since the listing agreement between Foster and Wagner is essential to a proper understanding of this case, it is set out in full below:

"The State of Texas }
County of El Paso }

"On May 7, 1954, C. H. Leavell and D. R. Ponder obtained an option to purchase

"All of Tract 4A, in Block 1 of the Ascarate Grant in El Paso County, Texas, according to the Resurvey thereof made by El Paso County for tax purposes, containing 1158.76 acres, more or less,

and in consideration of Dennis S. Wagner negotiating such option contract the said Leavell and Ponder

agreed in writing on the same date that in the event they should hereafter construct any dwellings on any part of said land then the said Dennis S. Wagner shall be their exclusive sales agent at a commission of 3½% of the gross sale price of all dwellings selling for less than $10,000.00 and 4% on all dwellings selling for $10,000.00 or more, and Leavell and Ponder agreed that in the event any of the land is sold to a builder or builders to construct dwellings thereon then such sales shall be conditioned that Dennis S. Wagner shall be the exclusive sales agent for such builder. Said agreement provides that if the said Dennis S. Wagner is unable to secure a buyer after 60 days after any dwelling has been completed then Leavell and Ponder, or such builder or builders as the case may be, shall have the right to list such unsold dwelling or dwellings with another real estate agent or agents, together with the said Dennis S. Wagner, and in such event whichever agent makes the sale shall be entitled to the commission.

"The option on Tract 4A, Block 1, Ascarate Grant, has been assigned to Texas Homes, a corporation, and Texas Homes has this date entered into a contract with C. H. Foster granting him an option to purchase 70 acres of land for housing development, such option to be exercised within one year from date thereof. In consideration of C. H. Foster granting to Dennis S. Wagner the exclusive right to sell all of the houses constructed by him on said 70 acres, or any part thereof, and in addition the exclusive right to sell all houses constructed by C. H. Foster on the West 40 acres of Tract 1A, Block 2 of the Ascarate Grant, which 40 acres the said C. H. Foster also holds under option to purchase, the said Dennis S. Wagner agrees that the commission on the gross sale of each house shall be 3% instead of the 4% provid-

ed in said listing agreement with Ponder and Leavell and Dennis S. Wagner hereby releases the 70 acres from his original listing agreement with Ponder and Leavell. This release, however, shall not be effective unless and until C. H. Foster exercises the option to purchase said 70 acres, or if he purchases only a portion of same then the release shall apply only to the portion on which C. H. Foster actually exercises his option.

"As between C. H. Foster and Dennis S. Wagner it is agreed as follows:

"I.

"Dennis S. Wagner agrees to use diligence in securing purchasers for each and every residence erected by C. H. Foster or his assignee at such price and on such terms as C. H. Foster may place thereon, and Dennis S. Wagner agrees to pay for all advertising and promotional expenses.

"II.

"Dennis S. Wagner shall be paid a commission of three per cent (3%) of the gross sale price of each and every residence when the sale of such residence is closed. Said commission shall be payable even though such residence is sold by another agent or is sold direct by the builder.

"III.

"If Dennis S. Wagner is unable to secure a buyer within sixty days after any dwelling has been completed, the completion date to be the date of FHA Final Inspection, then Foster shall have the right to list such unsold dwelling, or dwellings with another real estate agent, together with the said Dennis S. Wagner and in such event whichever agent makes the sale will be entitled to the commission.

"IV.

"If Foster does not exercise the option to purchase any portion of said 40 acres or of the 70 acres, then as to the land not purchased this agreement shall be of no force or effect.

"V.

"If Foster exercises the option on all or any part of the land covered by this agreement and thereafter if such land, or any part thereof, is conveyed to another person or corporation then the terms of this agreement shall be binding upon such subsequent owner as to the land so conveyed.

"Executed this 13th day of October, A.D. 1956.

"/s/ Charles H. Foster
"/s/ Dennis S. Wagner"

(The above instrument was acknowledged by both parties before a Notary Public in El Paso County, Texas, on October 22, 1956.)

Following the execution of the above contract, C. H. Leavell and Dan R. Ponder, by deed dated January 22, 1957, conveyed to the Newster Company, Inc. (alleged by appellee to be the alter ego of defendant Foster), a certain 41.39 acre tract of land out of Block 2 in Ascarate Grant, in El Paso County, Texas, being all of Tract 1A *and a portion of Tract 1C in Block 2* of said Ascarate Grant, according to a survey thereof made by El Paso County for tax purposes. The land being more fully described by metes and bounds as containing 41.39 acres of land, more or less, but such deed failed to disclose how much of the land was located in Tract 1A and how much in *Tract 1C* of said Block 2 of Ascarate Grant.

Appellee contended in the trial court, as he does here, that the conveyance of the 41.39 acre tract of land to the Newster Company, Inc. was made pursuant to the exercise by Foster of his option, referred to in the listing ageement as "the West 40 acres of Tract 1A, Block 2, of the Ascarate Grant, which 40 acres the said C. H. Foster also holds under option to purchase * * *"

The deed from Leavell and Ponder to the Newster Company was offered in evidence by appellee and admitted by the court to show the exercise by Foster of his option on the 40 acres mentioned in the listing agreement. Appellants' objection to the admission in evidence of this instrument, on the grounds "that it is an attempt to explain and clarify the description of the property by extrinsic evidence which was not in existence at the time of the written listing contract upon which this action is founded * * *", was overruled.

The option on the 70 acres of land out of Tract 4A, in Block 1 of the Ascarate Grant was admittedly never exercised by defendant Foster; and, consequently, only the West 40 acres of Tract 1A, Block 2, of the Ascarate Grant, or, as shown by the above-mentioned deed, the 41.39 acres, more or less, *being all of Tract 1A and a portion of Tract 1C,* in Block 2 of Ascarate Grant, El Paso County, Texas, is involved here.

Appellee Wagner contends that under the terms of his listing agreement with Foster, he acquired the exclusive right to sell each and all of the houses and dwellings to be erected on said land for a commission on the gross sale of each house equal to three per cent of the gross sale value thereof; that, in addition, the defendant Foster became bound, in the event said land, or any part thereof, was conveyed to another person or corporation, to bind such subsequent owner to pay plaintiff Wagner commissions as provided in Foster's contract with Wagner. Appellee further contends that the defendant Foster breached his contract with Wagner by inducing the Newster Company, Inc. to convey the remaining land owned by it in Eastwood Heights, Section 2, to Dautrich Real Estate Company, without binding it (Dautrich Real Estate Company) to pay plaintiff Wagner commissions

as provided in the listing agreement; that the named defendants conspired, and each of them conspired with each and all the other defendants, to defraud the plaintiff Dennis S. Wagner out of the commissions he was legally entitled to receive, and to induce the Newster Company, which was controlled by defendant Foster, to break said listing agreement by conveying the remaining land held by it to the Dautrich Company.

According to the testimony of the plaintiff Wagner, in November 1956, prior to the exercise by Foster of his option on the West 40 acres of Tract 1A and prior to the delivery of the deed from Leavell and Ponder to the Newster Company, Inc., dated January 22, 1957, which conveyed the 41.39 acres of land involved in this suit, there was a get-together meeting or dinner of some kind, at the Hilton Hotel, which was attended by the defendant Foster and the key men of his organization, and by the plaintiff Wagner and the key men of his organization. At this meeting (which was prior to the time the listing agreement became binding on either of the parties thereto, since the option had not been exercised), Mr. Foster made a speech on this project and what he was expecting to do with it. The following testimony was elicited from plaintiff Wagner by his own counsel, on direct examination:

"Q. Do you recall in substance what he said about it? A. Well he said it was something that El Paso has never had, and that he would be the first in Texas and the only one in Texas with forty year loans under this new FHA 213.

"Q. Do you recall what he said about who had, if anybody, had the exclusive rights to sell those lots and houses out there? A. Yes, sir.

"Q. Who did he say was the one that was going to do the selling? A. Well, our meeting of the Wagner Company, had a meeting with Foster and his employees on this 213 and we certainly were the—known then as exclusive agents to him and his organization.

"Q. On that occasion did he hand out some mimeograph or multigraph copies of sales points for Foster Built Homes in Eastwood? A. Yes, we had these here for the salesmen to tell their clients what they had to offer in these homes."

It was appellants' contention that the listing agreement was intended by the parties to apply only to the FHA Section 213 project, and only to dwellings erected on said land by Foster or his assignee (Newster Company, Inc.). That during the year 1957, Foster or his assignee erected fifty dwellings on the land under the Section 213 FHA commitments; that the commitments expired within one year from their date; that Foster and/or the Newster Company ceased building FHA Section 213 homes on said land, and that the last of such homes were sold November 27, 1957. It is appellants' contention that the listing agreement terminated when defendant Foster ceased building homes under the FHA–213 project, and appellee Wagner had received the last of the commissions earned by him in connection with the sale of such homes, which amounted to $22,132.95, all of which was admittedly paid to him.

Wagner does not contend that either defendant Foster or the Newster Company has failed to pay the commissions earned by him, but he does contend that they, and the other defendants, fraudulently deprived him of future commissions that would have been earned by him from the sale of dwellings which would thereafter be erected on said land, when such defendants, individually, with each other, and together, conspired to induce the Newster Company to convey the remaining land to Dautrich Company without binding it to pay Wagner the commissions.

We think it significant that plaintiff Wagner, or his counsel, first construed the ef-

fect of paragraph V of the listing contract as a covenant running with the land. Wagner testified that his attorney, the one who had drawn the listing contract, also filed it in the public records of El Paso County, Texas. At Paragraph IV of plaintiff's original petition, it is alleged:

"The contract further provided that 'if Foster exercises the option on all or any part of the land covered by this agreement and thereafter if such land, or any part thereof, is conveyed to another person or corporation, then the terms of this agreement shall be binding upon such subsequent owner*s* as to the land so conveyed.' The provisions of said contract became binding on each and every subsequent purchaser, with notice thereof, claiming by, through or under the defendant Foster. All defendants had such notice."

In the same connection, at paragraph III of plaintiff's original petition, referring to the listing agreement, plaintiff alleged, and then abandoned, by striking therefrom, the following: ("~~in order to impress a covenant running with the land on approximately forty acres on the West end of Tract 1A, Block 2 of the Ascarate Grant in El Paso County, Texas, upon which the defendant Foster at that time had an option to purchase~~) made an agreement in writing, * * *" and struck the following additional pleading: ("~~Through said contract plaintiff acquired an interest in all of said land.~~")

We assume, from appellee's abandoned pleadings, that he concedes he acquired no interest in the land by virtue of the listing agreement, and that such listing did not constitute a covenant running with the land. We think this question has been settled by the Supreme Court of Texas. In passing upon a similar question, involving a promise by the owner of land made to a real estate dealer, to the effect that successive owners of such land would be bound by the terms of such personal covenant to pay such agent the real estate commissions due or to be-

come due thereunder, speaking through Justice Norvell, the Court said:

"This type of promise, being purely for the benefit of one having no interest in the land, will not be enforced against successive owners of real property as a covenant running with the land. Land is an article of commerce. It should be subject to ready sale and lease. To burden lands with personal covenants would be to hamper and impede real estate transactions to the detriment of owners, purchasers and agents." Blasser v. Cass, 158 Tex. 560, 314 S.W.2d 807, 809.

Because of the disposition to be made of this case, we deem it unnecessary to specifically pass upon the question of whether such personal covenant, made between an owner of land and a *licensed real estate dealer* would (in view of the provisions of Title 113A, the Real Estate Dealers Licensing Act), be binding upon the promisor, even as between the parties. We think, however, that more than a mere intention to impress a covenant running with the land would be required. For such a personal covenant to be binding upon the promisor, we believe the agreement itself should impose an affirmative burden of some kind on the promisor. Such is not the case before us.

Appellants' first five points are complaints by which it is contended that the trial court committed fundamental error, (1), in refusing to enter judgment for defendants, there being no proof that the property conveyed by Newster Company, Inc. to Dautrich Real Estate Company was the same property described in the listing; (2), in refusing to enter judgment for defendants, since the listing was unenforceable because of insufficient description of the real estate covered thereby; (3), because the listing contained no selling price for the property covered thereby; and, (4), in overruling defendants' motion for instructed verdict, there being no evidence of any breach of contract; hence, no conspiracy

and no damage; and (5), because the evidence conclusively proved that the listing had expired prior to the alleged breach.

The listing contract referred to two options held by the defendant Foster: (1), contract between Texas Homes, a corporation, and C. H. Foster, dated October 13, 1956 (the same date as the listing contract), under which Foster acquired an option on an unspecified 70 acres out of a certain described tract containing 1158.76 acres of land; and (2), an option held by C. H. Foster (the date of such option and with whom it was made is not disclosed by the listing), on "the West 40 acres of Tract 1A, Block 2 of the Ascarate Grant * * *". The description of such 40 acres is indeed meager. Its location is not precisely shown by the listing to be in El Paso County or in the State of Texas. The prior reference made to Ascarate Grant in El Paso County, Texas, refers only to Tract 4A, Block 1, according to the *Resurvey* thereof made by El Paso County for tax purposes; and even if the presumption is indulged that the 40 acres is located in El Paso County, Texas, some uncertainty exists as to whether the reference to Tract 1A, Block 2, relates to Ascarate Grant as *originally* surveyed, or to a single unidentified survey of, perhaps, several *resurveys* of Ascarate Grant. In addition, the listing refers to a precise 40 acres in said Tract 1A, which requires that it be precisely located. A description of land calling for the West 40 acres, *more or less*, would, in our opinion, be insufficient under the Statute of Frauds, because of the uncertainty with respect to how much more, or how much less, than 40 acres, was intended to be conveyed; the real difficulty would lie in trying to determine where to place the East boundary line of such tract.

The deed under which Foster is purported to have exercised his option on the 40 acres described in the listing does not refer to any prior option pursuant to which the deed might have been executed, nor does it refer to the listing agreement. It was made at least three months after the listing agreement was executed, and neither instrument refers to the other. It does not purport to convey the West 40 acres of any designated tract, but conveys 41.39 acres of land, described by metes and bounds as being all of Tract 1A and a portion of Tract 1C, in Block 2, Ascarate Grant, in El Paso County, Texas according to the survey made of Ascarate Grant by El Paso County for tax purposes. Since the listing does not specifically cover any land in Tract 1C, and because there is no evidence contained in the record to show, or by which we can determine, how much of the land covered by the deed was located in Tract 1C and how much in Tract 1A, and assuming that the deed was properly admitted in evidence, over defendants' objections (heretofore set forth), the subsequent platting and subdividing of said 41.39 acres into lots, blocks, streets and alleys, as shown by plaintiff's Exhibit P–13 and plaintiff's Exhibit P–3, purporting to be maps or plats of Section C, Eastwood Heights Addition, do not show, nor can we ascertain from such maps, in which of the two tracts the lots and blocks shown thereon are located. Tidwell v. Cheshier, 153 Tex. 194, 265 S.W.2d 568.

The deed from the Newster Company, Inc. to Dautrich Real Estate Company, a corporation, dated May 5, 1958 (plaintiff's Exhibit P–19), is the deed by which it is contended that the listing agreement was breached. The land conveyed by this deed is described by lots and blocks with reference to Eastwood Heights, Section C, an addition to the City of El Paso, El Paso County, Texas. Standing alone, or with reference to the only maps or plats in evidence, the question of whether the land conveyed thereby is part of the identical land covered by the listing agreement, which is the basis of this suit, must be based upon a presumption.

We do not believe that such matters, if subject to proof, may be presumed. There is no testimony in the record whereby plain-

tiff has shown, or attempted to show, that the 58·lots covered by the Newster deed are located in the West 40 acres of Tract 1A, Block 2, Ascarate Grant.

■ Since 1875, it has been the law in Texas that one presumption may not be based upon another presumption. *Sulphen .v. Norris*, 44 Tex. 204.

First, it must be presumed that the option mentioned in the listing agreement referred to Foster's option from Leavell and Ponder; next, it must be presumed that the deed from Leavell and Ponder to Newster Company (Exhibit P–2), constituted an exercise of that option by Foster, although the land conveyed to Newster Company exceeds the precise amount of land mentioned in the listing agreement, and is located in and is a part of two distinct tracts of land; whereas, the listing contract confines the land subject to the listing to the West 40 acres of a single tract.

■ The parol evidence rule in Texas, is not merely a rule of evidence or procedure; it is a rule of substantive law. Evidence admitted in violation thereof is incompetent and without probative force, and it cannot properly be given legal effect. Thus, evidence admitted in violation of ·the parol evidence rule cannot avoid or change the tenor of the written instrument, nor will it support a verdict of a jury or a finding of fact by the court. It cannot be made the basis of a finding of fact by an appellate court, nor considered by such court in determining the sufficiency of the evidence to support the judgment. 17 Tex.Jur. 793, sec. 353 (and cited cases).

■ Essential details, not contained in the listing agreement, might have been supplied by the option contract; but, although we are of the opinion that the trial court erred in excluding the option contract between Leavell and· Ponder and the · defendant Foster, under which the 41.39·acres· of land was subsequently con-veyed to the Newster Company, Inc., we do not consider this a matter about which appellee may complain. It was offered in evidence by defendants and excluded by reason of appellee's own objections. Defendants contended that such option (defendants' Exhibit D–2), was admissible, and should be considered, together with the listing agreement, both having been prepared by appellee's own attorney, who had full knowledge of the contents of both instruments and because the listing contract not only referred to such an option, but also because the validity and effectiveness of the listing was contingent upon the exercise of the option.

■ Defendants first tendered their Exhibit D–2 in evidence without limitation; and, same having been excluded, it was next offered by defendants (as shown by Defendants' First Bill of Exceptions), for the limited purpose of rebutting plaintiff's allegations of a conspiracy, and for that reason only. The exhibit contained the following declaration: "Foster represents that he is not purchasing said land for speculative purposes but for the sole purpose of constructing an FHA 213 project thereon * * *" Plaintiff's attorney was not only aware of Foster's intent, as declared in such instrument, but had drawn the instrument himself, as well as the listing contract, and had full knowledge of the contents of both instruments. Knowledge or notice to one's own attorney under such circumstances must be imputed to the client. It was the defendant Foster's contention that he had acquired the option, made the agreement with Wagner, and purchased the land for the sole purpose of constructing FHA Section 213 houses thereon, and that Wagner knew this; thus, it was contended, when defendant ceased to build such houses, the contract terminated, and, Foster being no longer bound thereby, was free to convey the remaining land upon which no houses had been constructed.

■ Even . should it be assumed that such instrument was properly excluded

from the evidence on the ground that it was offered in violation of the parol evidence rule, we think its exclusion was improper under the facts of this case; a conspiracy having been alleged, every circumstance tending to cast light on the transaction is legitimate and proper. A civil conspiracy having been alleged, it may be proved by either direct or circumstantial evidence. Great latitude is allowed in proving the conspiracy, and equal latitude should be indulged when evidence is offered to rebut such proof.

The existence of the option between Leavell and Ponder and the defendant, Foster, was one of the circumstances surrounding the execution of the listing agreement, and the exercise of the option was one of the objects of the listing. We believe it constituted a vital link in plaintiff's evidence, without which the subsequent deed from Leavell and Ponder to the Newster Company (not referred to in the listing agreement) may only be connected to the land covered by the listing agreement by parol evidence.

■ While parol evidence is admissible to bring different writings together, it may not be employed to connect them with each other; the connection between such instruments must be evident from the writings themselves. Douglass v. Texas-Canadian Oil Corporation, 141 Tex. 506, 174 S.W.2d 730; Taber v. Pettus Oil & Refining Co., 139 Tex. 395, 162 S.W.2d 959, 141 A.L.R. 808; Tidwell v. Cheshier (supra).

■ No connection being shown between the listing agreement and the deed, except by parol, the deed may not properly be considered for the purpose of supplementing the insufficient description of the land appellee contends was intended to be covered by the listing agreement.

■ From what we have said, it follows that we consider the listing agreement insufficient to satisfy the requirements of Article 6573a, Section 28, Vernon's Annotated Civil Statutes of Texas, which provides, in part, as follows:

"No action shall be brought in any court in this State for the recovery of any commission for the sale or purchase of real estate unless the promise or agreement upon which action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunder lawfully authorized." 9 Tex.Jur.2d 716, sec. 29 and 30.

■ Appellee contends that this is not a suit for commissions, but is a suit for breach of contract and conspiracy to induce breach of contract. As a licensed real estate dealer, and as one whose business is such as to bring him within the classification of a real estate dealer, by engaging in the activities enumerated by the statute (Article 6573a, supra, known as the "Real Estate Licensing Act"), the appellee is entitled to all the protection the Act affords to his profession; but, at the same time, he is also subject to, and is governed by, all the applicable terms and conditions of that Act. Contracts involving real estate, and covered by such Act, must be construed in the light of such Act.

The listing contract being unenforceable, it imposed no duty on the defendant Foster. In the absence of some legal duty owed by the defendant Foster to plaintiff, we can find no basis for sustaining the trial court's finding that a breach of contract occurred. Foster was not prohibited by the terms of his contract with Wagner from selling the land upon which no dwellings had been constructed, and we believe he was under no affirmative duty to bind the subsequent owner of the land to the terms of any personal covenant he might have had with plaintiff, since such personal agreement must fail as a covenant running with the land. It also follows, if there is no breach of contract, that the jury findings on conspiracy to breach, as well as its findings on actual and exemplary damages, must fail.

Other points raised by appellants will not be discussed, since we consider them unnecessary to our decision in this case.

The judgment of the trial court is accordingly reversed, and judgment is here rendered for defendants.