**REPUBLIC NATIONAL BANK OF DALLAS et al., Petitioners,**

v.

**Charley H. STETSON et ux., Respondents.**

No. A–10443.

Supreme Court of Texas.

April 28, 1965.

Rehearing Denied May 26, 1965.

Bradford Pickett, Liberty, Baker, Botts, Shepherd & Coates, Wm. R. Choate, Houston, with above firm, for petitioners.

Zbranek & Friend, Liberty, for respondents.

POPE, Justice.

Republic National Bank of Dallas, as executor of the estate of Wirt Davis, sued

Charley H. Stetson in trespass to try title to recover two enclosures occupied and claimed by Stetson. Stetson, by counter-claim, asserted ten years' limitation title to the enclosed tracts but he contended that Davis orally gave him enough additional acreage to total 160 acres. The jury found that Stetson had perfected limitation title to the two enclosures and also that Wirt Davis Sr. on March 28, 1947, orally gave Stetson the enclosures "plus sufficient additional acreage to aggregate 160 acres." The trial court rendered judgment for Stetson for 160 acres, and the Court of Civil Appeals affirmed. 382 S.W.2d 775.

Plaintiff Bank urges that (1) Stetson, by executing two acknowledgments of tenancy after he perfected limitation title, destroyed his own claim to limitations, because the tenancy agreements operated as estoppel by deed, (2) one of the tenancy agreements was in fact a deed, and (3) the oral gift was void because it did not describe the lands given. The parties stipulated that plaintiff Bank had record title to the lands subject to Stetson's claims of limitations and parol gift. It is our opinion that plaintiff Bank is wrong in the first two contentions and that Stetson's judgment for the two enclosed tracts should be affirmed. Bank's

third contention is sound. The judgment awarding Stetson an additional undescribed eighty-one acres located somewhere outside his fences is reversed and rendered for plaintiff bank.

The jury found that Stetson perfected limitation title to the two enclosures prior to March 28, 1947, and those findings are not challenged. Stetson proved that he held continuous adverse possession beginning in 1921 when he fenced one tract of 59.9 acres and another non-contiguous tract of 19.9 acres. Wirt Davis, Sr., owned about 60,000 acres of which Stetson's two enclosures were a small part. After Stetson fenced the tracts, he did not see Davis, the record owner, until 1934. He saw Davis again in 1940 when Davis, according to Stetson, orally told him that he was giving Stetson 160 acres including his fenced enclosures. Davis died in 1945. On March 28, 1947, a date after limitations had matured title in Stetson, Writ Davis, Jr., sent his foreman to bring Stetson to his attorney's office. Stetson then signed an acknowledgment of tenancy agreement.[1] This document stated that Stetson's original entry was as a tenant, that he had always been a tenant, that Stetson knew of no

1. "Before Me, the undersigned authority, on this day personally appeared Charley Stetson, well known to me to be a credible person, who being by me first duly sworn on oath deposes and says:

"That he is a resident citizen of Liberty County, Texas, and is fifty four years of age, * * *. In the Fall of 1916, he moved with his Uncle, the said Bud Smith, to the Martinez Survey No. 2 and that he and his Uncle together established the farm where he now lives, said farm being known as Sand Prairie in lower Gammergrass Prairie * * * that affiant went to live on said farm with his Uncle, Bud Smith, as agents for Capt. Talifierro, who owned an interest in the Martinez Surveys Nos. 2 and 8 at that time; * * * That all the time he has been living on said land he has been there as a tenant at will and agent of Capt. Talifierro, protecting said land and preventing any unauthorized use or cultivation or fencing of said land, and that since the time when Wirt Davis ac-

quired said Martinez Surveys Nos. 2 and 8 he has been there as the tenant at will of the said Wirt Davis. That affiant has for the past twenty years farmed a portion of said Martinez Survey No. 2 * * *. That in all the time that affiant has lived on said Survey he knows of no one who has asserted any claim or title against said Wirt Davis or his grantors * * *.

"Affiant further states that he acknowledges himself to be a tenant at will of the children of the said Wirt Davis and of the Executor and Trustee of his Estate, and that he makes no claim to any right, title or interest to any part of said Martinez Surveys Nos. 2 and 8 and the Thomas Cope Survey.
　　　　　　　　"/s/ Charley Stetson
"Sworn to and subscribed before me this 28th day of March, A.D.1947."
　　　　　　　　"/s/ C. R. Wilson
　　　　　　　　"Notary Public Liberty
　　　　　　　　　"County, Texas"

adverse claims to the land and that he at that time was a tenant of the Davis Estate. On November 5, 1954, Stetson, at the behest of Wirt Davis, Jr., signed a second acknowledgment of tenancy, but the instrument omitted all description of land,[2] including the county where the land was located. Some time later the description was added.

Stetson had matured title to the two enclosed tracts before he executed either of the two acknowledgments of tenancy, and they did not divest him of that title. Plaintiff Bank argues that Stetson is bound by the recital of facts contained in his acknowledgment of tenancy and that he is estopped to dispute them. Stetson insists that once his title was acquired through adverse possession it was not thereafter divested by declarations to the former record owner that his possession was not adverse.

■■■ A limitation title once consummated, is as full and absolute as any other perfect title, and it is not lost by a subsequent oral statement by the limitation owner that he never intended to claim by limitations. Jobe v. Osborne, 128 Tex. 509, 97 S.W.2d 939 (1936); Bruce v. Washington, 80 Tex. 368, 15 S.W. 1104 (1891); 2 C.J.S. Adverse Possession 807 § 208. A written acknowledgment of tenancy by one who has perfected title is also ineffective to divest a limitation title. The precise point was faced in Franklin v. Smith, 265 S.W. 715 (Tex.Civ.App.1924, writ ref.), the court writing:

"* * * appellant contends that since it was shown by the undisputed evidence that on the 21st day of September, 1914, appellee Smith executed an instrument whereby he acknowledged

that he was a tenant of those owning the record title to the land he now claims by limitation, and since it was shown that appellee's wife had thereafter contracted with such owner to purchase a part of said land, appellee Smith is estopped from claiming title by limitation.

"We think an answer to the two propositions is: * * * and, second, that it having been shown that appellee Smith had perfected his title by limitation prior to the execution of the acknowledgment of tenancy, and prior to the proposed purchase by his wife, such acknowledgment and proposed purchase would not affect the title so acquired by limitation. Such acts on the part of Smith and wife could not serve to destroy their title theretofore acquired and perfected by limitation. Limitation title, like all other sorts of titles, cannot be defeated by a mere gratuitous acknowledgment that takes place subsequent to its acquisition."

In Brown v. Fisher, 193 S.W. 357 (Tex. Civ.App.1917, writ ref.) the facts showed that Fisher took possession of the land in October 1899. In November 1909, he signed an acknowledgment of tenancy, and Brown filed suit in 1913. Fisher answered by a plea of the ten-year statute of limitations. In affirming a trial court judgment for Fisher, the Court of Civil Appeals stated:

"* * * the jury in this case found that appellee was in peaceable and adverse possession of the land in controversy for the full period of ten years prior to November 11, 1909, which was the date of the acknowledgment of tenancy by appellee, and therefore if

2. "The Undersigned further acknowledges that he is not now and never has occupied or claimed any lands in this county adversely to the claim or title of the late Wirt Davis, his heirs, or the legal representatives of his estate; and in consideration of being allowed to occupy the lands more particularly described in the first paragraph as the tenant at will of

the heirs and legal representatives of the estate of the late Wirt Davis, the Undersigned does hereby grant, assign and convey all his right, title and interest in all lands owned or claimed by the Undersigned lying within the boundaries of the tract above identified to the heirs and legal representatives of the estate of the late Wirt Davis."

the jury's finding on that issue is supported by the evidence, which we hold it is, the acknowledgment of tenancy after the title by limitation was complete would not have the effect to divest title so acquired by appellee out of him, and such acknowledgment of tenancy could only be considered by the jury in passing upon the question of whether the possession theretofore held by appellee had been adverse, but the same could have no other effect."

In similar situations, an owner was not estopped by offering to purchase the land in question from the record owner, Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81 (1942); nor by partition deeds, Hamilton v. Hamilton, 154 Tex. 511, 280 S.W.2d 588 (1955); nor by making disserving recitals in a partition deed, Illg v. Garcia, 92 Tex. 251, 47 S.W. 717 (1898); nor by recitals in a boundary agreement, Perry National Bank v. Eidson, 161 Tex. 340, 340 S.W.2d 483 (1960).

Plaintiff Bank relies upon Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626 (1941) in support of its argument that an acknowledgment of tenancy, instead of constituting mere evidence against Stetson, was a legal estoppel. In Greene v. White a grantee under a deed with reservations of the minerals was held estopped by the deed which he accepted and by acts of ratification of the deed. The estoppel defeated the limitations claim. The deed and subsequent ratification make the difference between that case, where estoppel is proper, and this one, where it is not.

■ The second acknowledgment of tenancy, the one dated February 5, 1954, contained the additional clause that " * * the Undersigned does hereby grant, assign and convey all his right, title and interest in all lands owned or claimed by the Undersigned lying within the boundaries of the tract above identified to the heirs and legal representatives of the estate of the late Wirt Davis." These words of grant suggest that the principles of Greene v. White

may make that acknowledgment effective as an estoppel by deed. However, the undisputed evidence shows that the instrument was signed in blank, and Stetson gave no authority to anyone to fill in the description or alter the document. There being no land described in the deed, it could not operate as a conveyance. Greer v. Greer, 144 Tex. 528, 191 S.W.2d 848, 849–850 (1946) states the rule that "in all instruments for the conveyance of lands the description must be so definite and certain upon the face of the instrument itself, or in some other writing referred to, that the land can be identified with reasonable certainty; otherwise, the instrument is void under the Statute of Frauds." Accord, Reserve Petroleum Co. v. Hodge, 147 Tex. 115, 213 S.W.2d 456, 7 A.L.R.2d 288 (1948); Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703 (1935); Norris v. Hunt, 51 Tex. 609 (1897); Johnson v. Granger, 51 Tex. 42 (1879); 4 Lange, Tex.Land Titles, § 601. We conclude, therefore, that neither of Stetson's acknowledgments operated as an estoppel against his limitation claim.

■ Plaintiff Bank urges that the acknowledgments, in any event, were sufficient to prove an estoppel in pais. Plaintiff Bank requested only a part of the issues which comprise the elements of an estoppel in pais, Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952). The issues were refused by the trial court, and Bank failed to preserve the point before the Court of Civil Appeals. Edwards v. Strong, 147 Tex. 155, 213 S.W.2d 979, 980 (1948). Its argument that it was entitled to judgment as a matter of law upon this theory cannot be sustained since the evidence presented disputed issues of fact.

Plaintiff Bank's contention that Stetson failed to prove that Wirt Davis, Sr. made a parol gift to Stetson of eighty-one acres is sustained. Stetson asserted adverse possession only to the seventy-nine acres inside his two enclosures. His claim of ownership of enough to make a total of 160 acres is based entirely upon his pleadings

and proof of a parol gift. The jury found that in 1940 Wirt Davis, Sr. orally gave Stetson the lands described in plaintiff's petition, that being the enclosures, plus sufficient additional acreage to aggregate 160 acres; that Stetson "had possession of said premises with the consent of said Wirt Davis, Sr., or his agents," and that "Stetson made permanent and valuable improvements on said premises in reliance on said gift * * *."

Stetson at no time has furnished any identity of the eighty-one acres outside his enclosures which he says Wirt Davis gave him. The land was identified by no fences, no description, no pleadings, no evidence. It could not be located by the improvements inside the enclosures. When questioned at the trial, Stetson first said that Davis gave him the "home place" and that it contained 160 acres. He did not otherwise identify or locate the land. On closer questioning he testified that Davis did not mention the acreage.[3] At the end of the trial, no one knew or had data from which he could determine the boundaries of a tract of 160 acres which would include the two enclosures. To solve the problem, the court ordered a surveyor to locate 160 acres including and surrounding Stetson's enclosures. In the absence of authority for this procedure with respect to a parol gift of undescribed lands, the courts below have reasoned that the situation is analogous to that of an adverse possessor whose constructively possessed lands have been so located. The Court of Civil Appeals relied upon Kirby Lumber Co. v. Conn, 114 Tex. 104, 263 S.W. 902 (1924) in which case the trial court ordered a survey which would include the lands actually possessed and an additional acreage of lands constructively possessed by the adverse claimant for a total of 160 acres.

■■■ There is no analogy between a parol gift of unidentified lands and constructive possession of unidentified lands. The acquisition of lands by limitations and by parol gift proceed upon contrary theories. The statutes permit adverse possession, but prohibit parol gifts. The policy behind statutes which permit adverse possession is the settlement and repose of titles. Wilson v. Daggett, 88 Tex. 375, 31 S.W. 618 (1895). The Statute of Frauds, Article 3995(4), Vernon's Ann.Civ.St., and the Statute of Conveyances, Article 1288, V.A.C.S., prohibit parol conveyances of land, and the reason for those rules is the avoidance of uncertain and unsettled land titles resting in parol, fraud and perjury. Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 1116, 15 A.L.R. 216 (1921) said:

"Regardless of the disposition of other courts to engraft other exceptions upon a plain and salutary statute which had its origin in prolific frauds and perjuries with which parol contracts concerning lands abounded, this court has always refused to further relax the statute. We think the wisdom of its course has been justified."

■■■ A conveyance of realty must be in writing or fall within the strict requirements of the exceptions which have been strictly enforced. See Dawson v. Tumlinson, 150 Tex. 451, 242 S.W.2d 191 (1951); 4 Lange Tex.Land Titles, 270, § 423. It is

---

3. "Q. Let's clear up one thing, Mr. Stetson. In this conversation where you say that Wirt Davis, Sr., gave you this home place, how much acreage was that?
"A. 160 acres.
"Q. I ask you just a simple question: Presuming that he did give it to you at that time, I think you have testified now on this trial that he gave it to you the first time he ever saw you.

"A. Yes, sir.
"Q. And said, 'Take that 160 acres, Charley.'
"A. He didn't tell me 160 acres. He just told me, 'Charley, I know that is your home. I want you to have it. I told him when he come there and started on me, I said, 'Now, Mr. Wirt, I can't be responsible for people in here' * * *."

settled law that the description in a written conveyance must furnish within itself or by reference to some other existing writing, the means or data by which the particular land conveyed can be identified. Rowson v. Rowson, 154 Tex. 216, 275 S.W.2d 468 (1955); Hoover v. Wukasch, 152 Tex. 111, 254 S.W.2d 507 (1953); Matney v. Odom, 147 Tex. 26, 210 S.W.2d 980 (1948); Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150 (1945).

In Tidwell v. Cheshier, 153 Tex. 194, 265 S.W.2d 568 (1954) the description was "the following described property lying and situated in the County of Ellis, State of Texas, being approximately 154.63 acres of land in Ellis County, Texas, in two tracts, being out of the Benjamin Monroe Survey, W. J. Ely Survey, F. E. Witherspoon Survey"; in Stekoll Petroleum Co. v. Hamilton, 152 Tex. 182, 255 S.W.2d 187 (1953) the description was "4,000 of the 5,000 acre block No. 2 hereinabove referred to, said 4,000 acres to be selected by Buyer leaving Sellers 1,000 acres equitably checkerboarded * * *"; in Matney v. Odom, supra, it was "four (4) acres out of the East end of a ten-acre block on the P. Chireno Survey about 2 miles East from the courthouse of the city of Tyler, Smith County, Texas, located on the North side of the Kilgore highway,"; in Douglass v. Texas-Canadian Oil Corp., 141 Tex. 506, 174 S.W.2d 730 (1943) it was "37.1 acres of land in Wood County, Texas,"; in Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703 (1935), it was "100 acres out of Blocks 8 and 9 of the subdivision of Jose Maria Pineda Survey, which was patented to Adolphus Stern * * *"; in Pfeiffer v. Lindsay, 66 Tex. 123, 1 S.W. 264 (1886) it was "fifty acres of the J. M. Moss survey, abstract No. 462, situated near the town of Burlington, in Montague county, Texas"; and in Jones v. Carver, 59 Tex. 293 (1883) it was "a piece of land supposed to be forty acres". In each of these cases, the description was insufficient to satisfy the Statute of Frauds because it did not furnish the means to identify the land.

The description of the land which Stetson asserts that Wirt Davis, Sr. gave him falls short even of that which courts have rejected in the cases cited. Stetson did not know the boundaries of the land given. We can think of no reason that the description of land which is the subject of a parol gift should not be governed by the settled rule for written conveyances. Indeed the dangers which the statutes sought to guard against are greater in the case of oral conveyances. The parol gift of undescribed land to Stetson was void.

We affirm that part of the judgments of the courts below which awarded Charley H. Stetson title and possession of the lands within the two Stetson enclosures. We reverse the judgments below and render judgment that, with respect to the other lands in suit, Stetson take nothing on his cross-action.

SMITH, J., not sitting.