**Steve J. MAURO, Appellant,**

**v.**

**WILDWOOD COMPANY et al., Appellees.**

**No. 85.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

March 13, 1968.

Rehearing Denied April 10, 1968.

Fred F. Abbey, Houston, for appellant.

Joel W. Cook, Schlanger, Cook & Cohn, Thomas D. White, G. Ernest Caldwell, Knight, Prappas, Rowland & Caldwell, Houston, for appellees.

BARRON, Justice.

Plaintiff, Steve J. Mauro, filed suit against Wildwood Company, a corporation, Paraffine Oil Corporation, Stewart Title Company, Southern Title Company, Herbert J. Zieben and S. Alex Susholtz, all defendants, for payment of an alleged commission which he claims to have earned under a written listing agreement signed July 19, 1963. The listing agreement, termed an exclusive authority to sell real estate, was executed by Steve J. Mauro as realtor and by Wildwood Company, by S. Alex Susholtz, vice president of the corporation, as owner. The agreement provides for payment to Mauro of a 5% commission upon his procuring the sale or contract of sale of the property. The description of the property to be sold is "approximately 40

acres out of the Ritson-Morris Survey, in Harris County, Texas, adjacent to WILD-WOOD ADDITIONS."

Stewart Title Company and Southern Title Company were joined in this suit as holders of deposits of $10,000.00 and $18,860.68 respectively. Neither of the title companies made any claim to the above money. Wildwood Company was owned by three persons. S. Alex Susholtz and his sister, an attorney, Leona J. Susholtz, owned 50% of the stock and Herbert J. Zieben owned the remaining 50% of the stock. Zieben was president of the corporation and S. Alex Susholtz was vice president. The land which Mauro was empowered to sell was a substantial portion of the assets of Wildwood Company, and the trial court found that the sale was not in the usual and regular course of business of Wildwood Company as ordinarily conducted. The trial court further found that the president, Zieben, was at all material times personally in the City of Houston and not disabled to act and was accessible to telephone and other communication, but that Susholtz and Mauro failed to notify Zieben of the intended sale of the major assets of the corporation. The court found that Mauro made no inquiry and that Susholtz disregarded suggestions that Zieben should be contacted and notified. When Zieben received notification of the transaction and of the purported contract, he immediately repudiated it. This resulted in a lawsuit between the stockholders of Wildwood Company, the outcome of which left Zieben owning all of the stock of Wildwood Company. Another result was that a $265,000.00 mortgage loan was made on the property which Mauro was to sell, the proceeds of which were parceled out to the stockholders and to various creditors, with $18,860.68 of the proceeds being held as an "escrow" for the payment of Mauro's commission if he was entitled to it. The stockholders' litigation was settled and dismissed as between them, and was later settled as between Paraffine Oil Corporation, the alleged willing purchaser of the involved property, who received a dredging easement and a right-of-way easement in the settlement.

Meanwhile, before the filing of the stockholders' action above mentioned, Wildwood Company, acting by S. Alex Susholtz, executed an earnest money contract to sell the property involved to Paraffine Oil Corporation. In such written contract the property was described as 39 acres, more or less, (being part of tracts originally containing 76.849 acres, describing the deed) out of the Ritson-Morris Survey, "lying west of the channel or slough opening into Clear Lake." Also included were a number of undeveloped lots in Wildwood Additions, "and all other right, title and interest of seller, whether now owned or hereafter acquired before the date of closing hereof, in and to land and improvements located in the Ritson-Morris Survey * * * and lands lying adjacent to the lands described * * * above and underlying roads, easements and said channel or slough." The purchase price was listed as $6,500.00 per acre for 39 acres, $4,500.00 per lot for all waterfront lots, and $4,000.00 per lot for all other lots. The purchaser deposited $10,000.00 earnest money with Stewart Title Company, with a printed provision that the seller should have the right to retain the cash deposit as liquidated damages for the buyer's breach of the contract, and should pay "agent therefrom the *usual* commission, * * *."

The latter contract, by reason of the facts summarized above, was never consummated, and no money was paid to Mauro. Therefore Mauro filed this suit to recover his alleged commissions. The trial court, without a jury, decreed that Mauro recover nothing, and held that the listing agreement was unenforceable by reason of the vague and indefinite description of the property to be sold thereunder; that Susholtz, as vice president of Wildwood Company, had no authority to bind the corporation by a sales listing and a sales contract when the president of the corporation, owner of one-half of the stock, was available and not notified; and that Mauro was not entitled to collect commissions from Wildwood Company

while serving as trustee for Paraffine Oil Corporation in a related transaction which he did not divulge to Wildwood Company or any of its representatives.

Mauro is appellant, and the principal appellee is Wildwood Company. Appeal properly has been perfected to this court.

While serious questions related to the validity and enforceability of the sales contracts executed by Susholtz are presented, by reason of the provisions of V.A.T.S., Business Corporation Act, Art. 5.09, and Art. 5.10, involving sale of assets of a corporation requiring special authorization of Board of Directors and Shareholders when disposition of all or substantially all of the property and assets of a corporation is involved, we find it necessary for disposition of this case to consider only the first finding of the trial court. The trial court found on what we believe to be ample testimony, that the description of the property in the written listing contract was wholly inadequate, and that the land involved being irregular in shape and the description indefinite, could not be specifically located. The trial court found that it was unable to determine from the description of the lands what was intended to be embraced in the written agreement. We affirm the trial court's judgment.

By note included in the listing agreement it was recited that other information appeared on the reverse side of the sheet on which the contract was imprinted, but none of the blanks for the inclusion of such information were filled in. The agreement was typed by Leona J. Susholtz. We have as a description in writing, "approximately 40 acres out of the Ritson-Morris Survey, in Harris County, Texas, adjacent to Wildwood Additions." There are two Wildwood Additions, designated as Section One and Section Two. Appellant testified that he intended to include undeveloped acreage which he found consisted of about 40 acres. Further, there were approximately 22 lots adjoining, which were unsold in the additions, and apparently this was open land

adjoining the alleged 40 acres attempted to be described in the written contract, on which Mauro was claiming a commission under the contract. At the time of the signing of the listing agreement, Mauro thought that Wildwood owned some other property on the front of FM Road 528 consisting of about four or five acres of commercial property to the east of the subject property. When the property was surveyed it was found to contain only 38.03 acres, including about two acres under the waters of the slough which was excluded from the thirty-nine acre tract described in the earnest money contract. To arrive at 38.03 acres, the surveyor had to include 2.58 acres not adjoining either of the Wildwood Additions but lying south of FM Road 528. Excluding this 2.58 acres as not meeting the requirement of the listing agreement description as "adjacent to Wildwood Additions," the portion of the 39 acres described in the earnest money contract which is consistent with the information contained in the description employed by the listing agreement, is approximately 33.45 acres. The alleged 40-acre tract mentioned in the listing agreement, excluding the undeveloped lots which were sold, was actually made up of tracts of 2.58 acres, 12.45 acres, 1.47 acres, and 21.53 acres, at least one tract not being adjacent to either Wildwood No. 1 or No. 2 in the context in which the term "adjacent" is used. See 5 Lange, Texas Land Titles, Sec. 774, p. 207.

The Texas rule is well established. Insofar as the description of the property is concerned, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the particular land to be sold may be identified with reasonable certainty. Wilson v. Fisher, 144 Tex. 53, 188 S. W.2d 150; 5 Lange, Texas Land Titles, Sec. 762. In Pickett v. Bishop, 148 Tex. 207, 223 S.W.2d 222, it was held that a description of property, by reason of the use in the memorandum or contract of such

words as "my property," "my land," or "owned by me," is sufficient when it is shown by extrinsic evidence that the party to be charged and who has signed the contract or memorandum owns a tract and *only one tract* of land answering the description in the memorandum. See Jones v. Smith, 231 S.W.2d 1003 (Tex.Civ.App.), writ ref., n. r. e., and 34 Tex.L.Rev. 446. Here, Wildwood Company, by S. Alex Susholtz, vice president, signed as owner. Ordinarily such signature and designation as "owner" would render the description adequate under Article 6573a, Sec. 28, and Art. 3995, the statute of frauds, under the authority of the Pickett case above, if the contract had provided for inclusion of all property owned by Wildwood in the Ritson-Morris Survey.

■ The authorities on this matter establish the essential quality of two elements in determining the sufficiency of a property description in the required written agreement: (1) that the land be defined to be that of the owner, e. g., "my land," and (2) that the promisor owns specific property answering the description actually set out in the agreement and no other property within the designated area. The first requirement above, we believe, is fully satisfied by use of the term "owner" in the writing. But the extrinsic evidence in this case fails to satisfy the further requirement of the Pickett v. Bishop rule, that the proof show that the party who has signed the contract owns a tract and *only one tract of land* answering the description in the memorandum. The trial court found that "from the description contained in the authority to sell, no specific tract of land can be located, and the court is unable to determine from this description of the lands actually what was intended to be embraced in the authority attempted to be granted." We believe the trial court's finding is supported by the evidence. We find the following problems presented by the evidence outside the matters stated in the written description: did the listing agreement include the 2.58 acres which did not touch either Wildwood Addition but lay south of FM Road 528 as a separate tract? Was it the intention of the parties to include the four or five acres which Mauro thought the corporation owned? Was it Mauro's intention that the four or five acres lying east of the undeveloped acreage should be included in the lands authorized to be sold by the listing agreement? Were the lots in Wildwood Additions or in the vicinity of Wildwood Additions intended to be included in the listing agreement, and for the proposed sale of which Mauro was claiming a commission? Which tract or tracts adjacent to Wildwood Additions did the parties intend to include in the agreement? There were four of them, excluding the undeveloped lots, and one was a 21.53 acre tract and another was a 12.45 acre tract. In Phillips v. Burns, 151 Tex. 614, 252 S.W.2d 927, 928, a similar problem of description was involved. The court in that case considered the sufficiency of the following description:

> One certain farm located about 6 miles south of Linden, Texas, in Cass County, a part of the A. D. Duncan Survey, and known as the old Whipple Place, together with several tracts of land adjoining it; amounting in all to about 500 acres, now owned by the lessor herein.

The Supreme Court held that the inclusion of the words "together with several tracts of land adjoining it" rendered such description uncertain and indefinite, and said that the instrument did not even recite that it was intended to include all of the several tracts adjoining the old Whipple place that the lessor owned. In the case at bar there is no descriptive statement authorizing sale of *all* property owned by Wildwood Company in the Ritson-Morris Survey, and there are at least four tracts involved. The estimate of the total amount of acreage, which was indefinite, does not save the description.

In Tidwell v. Cheshier, 153 Tex. 194, 265 S.W.2d 568, the following description was considered:

The following described property lying and situated in the County of Ellis, State of Texas, being approximately 154.63 acres of land in Ellis County, Texas, in two tracts, being out of the Benjamin Moore Survey, W. J. Ely Survey, F. E. Witherspoon Survey.

The court held that the above description was insufficient to identify the land. See also Republic Nat. Bank of Dallas v. Stetson, 390 S.W.2d 257, 263 (Tex.Sup.); Shelton v. Allen, 407 S.W.2d 832 (Tex.Civ. App.), writ ref., n. r. e.

In Hereford v. Tilson, 145 Tex. 600, 200 S.W.2d 985, it was held where the description was "the real property and buildings located at No. 1805 South Haskell, Dallas, Texas" and where such description covered only a part of a larger tract owned by defendant, that the question of what part of the larger tract was intended to be included in such description could not be answered without resorting to parol evidence and could not be resolved with any reasonable degree of certainty. The Supreme Court reversed the judgment and held the description insufficient. While the last case above points up the rule, we repeat that there is no requirement in the written description in this case that all of the property belonging to Wildwood Company was to be sold, as seemingly contended by appellant. There is evidence in the record that acreage and some undeveloped lots were the total assets of Wildwood Company, and that "this was the only property in the Ritson-Morris Survey that Wildwood Company owned."

Appellant relies upon Investors Syndicate Credit Corp. v. Ates, 420 S.W.2d 444 (Tex. Civ.App.), no writ hist., where a 1.58 acre tract belonging to *owners* in the B. S. Watts Survey, Abstract 1048, Smith County, Texas, was involved. The court pointed out the rule in Pickett v. Bishop, supra, and held the description sufficient since the owners held title to no other land in such survey or in Smith County, Texas. But that case is distinguishable, since there was absolutely no uncertainty, and the 1.58 acre tract was clearly identifiable. Here the property and the amount thereof is neither clearly identifiable nor was all the property in one tract and "adjacent to Wildwood Additions." Some of it was across a state highway and there were at least four tracts involved. In Sanderson v. Sanderson, 130 Tex. 264, 109 S.W.2d 744, (Tex.Com.App.), opinion adopted, the description was "the town house and *all* lots now owned by Mrs. Kelton * * * located in Knox City" and described land in Haskell County as Mrs. Kelton's farm in Haskell County. The court held that if the evidence established that only one farm was owned by Mrs. Kelton in Haskell County the description was sufficient, and that the description of all lots owned by her in Knox City is sufficient. The case is distinguishable.

In Merzbacher v. Kirk, 278 S.W.2d 544 (Tex.Civ.App.), writ dismd., the court noted that although the written listing did not contain any description of the property as placed for sale with the appellee, the property was fully described later in the written contract of sale as executed by appellants which further provided for payment to the appellee as agent of a commission of 5% on the agreed purchase price. The judgment was affirmed in favor of the realtor. See Bridwell v. Sandefur, 341 S.W.2d 710 (Tex.Civ.App.), writ dismd. However, the contract of sale or earnest money contract in this case, while more specific in the description of the property failed to provide for a definite commission to be paid to appellant. The listing agreement was not referred to, and we have held that it was unenforceable. The contract of sale provided that the "usual" commission was to be paid appellant in the event of a failure to consummate the sale, payment to be made from the $10,000.00 earnest money deposited by the buyer. Such an agreement for a commission has been held to be insufficient, and

the amount of the commission to be paid cannot be supplied by parol testimony. Buratti & Montandon v. Tennant, 147 Tex. 536, 218 S.W.2d 842, 9 A.L.R.2d 742. Moreover, it was the seller who refused to comply with the contract.

There was no manner in which the specific property to be sold could be determined in this case from the written listing agreement and from the property on the ground. The parties themselves had difficulty in identifying the specific property, and we are unable to do so from the record with reasonable certainty. To prevent this type of uncertainty is one of the basic purposes of Art. 6573a, Sec. 28, and the statute of frauds.

We consequently affirm the judgment of the trial court. Our decision makes it unnecessary to discuss other points of error by appellant.

The judgment of the trial court is affirmed.