Farouk (Frank) ALATTAR, Appellant,

v.

John GANIM, Appellee.

No. 14–08–00756–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 18, 2010.

Amy Elizabeth Douthitt Maddox and Richard L. Tate, for appellant.

C. Zan Turcotte, Percy L. Isgitt, for appellee.

Panel consists of Chief Justice HEDGES and Justices ANDERSON and BOYCE.

## MEMORANDUM OPINION

ADELE HEDGES, Chief Justice.

In the dispositive issue in this appeal, we are asked to determine whether the statute of frauds bars a claim for appellant's alleged breach of an agreement to purchase real property on behalf of a partnership. Because the statute of frauds applies but was not satisfied, we reverse and render judgment that appellee take nothing.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On March 17, 2004, friends Farouk Alattar, a/k/a Frank Alattar, and John Ganim toured a property of approximately 3,800 acres (the "Property") in Washington County, Texas. Two days later, on March 19, 2004, Ganim again was present when Alattar executed a Purchase and Sale Agreement ("Purchase Agreement") to buy the land. In the Purchase Agreement, the buyer is identified as "Frank Alattar, Trustee." The trust's name and beneficiaries are not identified.

On March 22, 2004, Alattar and Ganim signed a document subsequently referred to as the "Letter of Intent." This document provides in pertinent part as follows:

1. Partnership will be 50–50% of all profits between John Ganim and Farouk Alattar.

2. Farouk Alattar will be the sole person making decisions for any future sale of property as long as it's double or

more price than we bought it for to avoid misunderstandings....

. . .

5. Both partners have the right, after any sale, to pull 50% of the proceeds....

. . .

10. Both partners could use any part of the property at anytime [sic] until property is sold.

11. Any partner that wants a piece of the land for himself or family and friends, it must be sold at fair market price regardless.

. . .

13. This partnership will not be valid if the Bank does not accept either one's credit application.

Although there are references in the Letter of Intent to a "future sale of property," the property to be sold is not identified. The Letter of Intent contains no references to any property contributed or to be contributed to the partnership, or property purchased or to be purchased by or for the partnership.

As relevant to this appeal, the record also contains an unsigned letter dated March 25, 2004 from attorney Michael Noonan to Frank Alattar (the "Unsigned Letter"). The letter bears the heading, "Re: Earnest Money Contract—3800 acres—Washington County, Texas." In the Unsigned Letter, Noonan wrote, "I have had an opportunity to review the Earnest Money Contract concerning your purchase of the 3800 acres near Brenham." After providing legal advice on a number of points pertaining to the Purchase Agreement, Noonan wrote, "We have had some discussions on proposed entity structure for this transaction and I will commence the formation of a limited partnership and a limited liability company to be general partner."

On March 26, 2004, Noonan again wrote to Alattar; his signed cover letter ("Cover Letter") bears the heading "Re: Gates Bluebonnet Hills, Ltd. and Alattar Interests, LLC." With the Cover Letter, Noonan enclosed documents creating these organizations. Noonan further wrote, "I am sending a copy of the partnership materials to John Ganim for his review.... Please review the materials and advise as to any further changes.... Once it is all approved, please sign the documents and return them to me for filing...."

Shortly thereafter, Alattar and Ganim executed an Agreement of Limited Partnership of Gates Bluebonnet Hills, Ltd. ("Partnership Agreement"). By its terms, the Partnership Agreement was effective March 29, 2004. General partner Alattar Interests, LLC owns a 1% interest in the partnership, and John Ganim and Farouk Alattar, as limited partners, each own a 49.50% interest in the partnership. Two exhibits form the last pages of the Partnership Agreement. Exhibit A identifies the parties, their addresses, their percentage interests, and the fair market value of the initial contributions of each. Alattar Interests, LLC's contribution is valued at $10, Alattar's contribution is valued at $250,000, and Ganim's contribution is valued at $1,000,000. Exhibit B is labeled "Assets to be Contributed by General Partner," but is otherwise blank.

After Ganim executed the Partnership Agreement, his attorney, William R. Bromley, reviewed it. On April 2, 2004, Bromley wrote to Ganim that the terms of the Partnership Agreement, which Bromley referred to as "the proposed limited partnership agreement," were not the same as the terms in the Letter of Intent. Bromley suggested changes that, in his view, were "so necessary that [he] would not do the deal" unless such changes were made. Ganim testified that he faxed

Bromley's letter to Alattar, whereupon Alattar told Ganim that he, Alattar, would not do business with Ganim. On April 7, 2004, Alattar's attorney wrote Ganim's attorney that Alattar would not proceed with the partnership.

On May 13, 2004, Ganim sued Alattar, eventually asserting claims for fraud, constructive fraud, fraudulent inducement, negligent misrepresentation, breach of contract, and breach of fiduciary duty. In his pleadings, Ganim sought an accounting, lost profits, punitive damages, the imposition of a constructive trust, specific performance, attorneys' fees, and costs.

While these events were unfolding, the Property owners became involved in litigation over title to the Property, causing the closing date of the sale to be delayed for approximately a year. On May 17, 2005, the Property was conveyed by special warranty deed ("Deed"), effective April 20, 2005, to "Farouk Alattar, Trustee." As with the Purchase Agreement, the Deed does not identify the trust's name or beneficiaries.

When the case was tried to a jury in March 2008, Ganim asserted that six documents, taken collectively, established that Alattar acquired the Property on behalf of the Alattar–Ganim partnership. Arguing that the writings failed to satisfy the statute of frauds, Alattar moved for an instructed verdict, which the trial court denied. He raised the same argument in an objection to the jury charge, and the trial court overruled the objection. Thus, in Question No. 2 of the charge, the jury was asked, "Do you find that the following writings as shown in the Plaintiff's Exhibits listed below constituted an agreement whereby the 3,800 Acres purchased by Frank Alattar, Trustee, was [sic] for the benefit of the Gates Bluebonnet Hills Limited Partnership?" The exhibits listed consisted of the Purchase Agreement, the Letter of Intent, Noonan's Unsigned Letter to Alattar, Noonan's signed Cover Letter to Alattar, the Partnership Agreement, and the Deed.[1] The jury found that the writings constituted such an agreement, and that Alattar failed to comply with it.

In calculating damages, the jury was asked to consider only (a) the expenses Ganim paid in reliance on the agreement, which the jury found to be $1,500.00; and (b) "49.5% of the difference, if any, between the present value of the 3,800 Acres, and the amount paid for the 3,800 Acres by Alattar, less all costs and expenses, if any, paid by Mr. Alattar in connection with the 3,800 Acres."[2] The jury found the latter sum to be $2,445,300.00. The trial court denied Alattar's motion to disregard these jury findings and render judgment that Ganim take nothing, and instead rendered judgment in Ganim's favor for $2,445,300.00, together with post-judgment interest.[3]

---

1. At trial, the documents were identified as Plaintiff's Exhibits 37, 18, 26, 19, 33, and 43. For clarity, we refer to the documents by name, and in chronological order.

2. The jury also found that (a) there was a relationship of trust and confidence between Ganim and Alattar, (b) Alattar failed to comply with a fiduciary duty to Ganim, (c) Alattar committed fraud against Ganim, and (d) Ganim foreseeably and substantially relied to his detriment on Alattar's promise; however, the jury did not find that Ganim sustained any damages as a result of this conduct. In addition, the unanimous jury found by clear and convincing evidence that the harm to Ganim resulted from malice or fraud, but chose to award no exemplary damages.

3. Ganim does not challenge the trial court's failure to include in the damage award the $1,500.00 the jury concluded that he expended in reliance on the six-document agreement.

## II. Issues Presented

Although Alattar presents five issues for review, his first issue is dispositive. He contends that the six writings the jury found to constitute an agreement between Alattar and Ganim do not satisfy the statute of frauds. Ganim responds that the statute of frauds does not apply, or alternatively, that it is satisfied.[4]

## III. Analysis

Although Alattar does not specify whether he is challenging the trial court's denial of his motion for directed verdict, the denial of his motion to disregard jury findings and enter judgment notwithstanding the verdict, or both, the same standard of review applies. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823, 825 (Tex.2005). "Judgment without or against a jury verdict is proper at any course of the proceedings only when the law does not allow reasonable jurors to decide otherwise." *Id.* at 823. Such a judgment in a defendant's favor is appropriate "if the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex.2000).

According to Alattar, the evidence conclusively established that the agreement the jury found to exist is barred by the statute of frauds. Whether an agreement falls within the statute of frauds is generally a question of law. *Bratcher v. Dozier*, 162 Tex. 319, 321, 346 S.W.2d 795, 796 (1961). If the statute applies, then the agreement is unenforcea-

ble unless it is in writing and signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him. TEX. BUS. & COM.CODE ANN. § 26.01(a) (Vernon 2009). The determination of whether a particular agreement is enforceable generally presents a question of law. *Vt. Info. Processing, Inc. v. Mont. Beverage Corp.*, 227 S.W.3d 846, 852 (Tex.App.-El Paso 2007, no pet.). Questions of law are subject to de novo review. *In re Humphreys*, 880 S.W.2d 402, 404 (Tex.1994).

### A. Applicability of the Statute of Frauds

The statute of frauds applies to a contract for the sale of real property. TEX. BUS. & COM.CODE ANN. § 26.01(b)(4). It is undisputed that there was an agreement for Alattar to purchase the Property; indeed, at trial, both parties relied on the Purchase Agreement and the Deed. The disputed issues relevant to this appeal were (1) whether Alattar agreed to purchase the Property for an Alattar–Ganim partnership, and if so, (2) whether Alattar failed to comply with such an agreement. The jury answered both questions in the affirmative. An agreement to purchase property is a contract for the sale of real estate; thus, the statute of frauds applies.

Ganim, however, asserts that the agreement embodied in the six documents is not a contract for the sale of real estate. In support of this position, he points out that he ultimately asked the jury to award him benefit-of-the-bargain damages rather than conveyance of the Property. But a

4. In his second issue, Alattar argues that the purported agreement is insufficiently definite to be enforceable because the writings contain materially conflicting terms. He asserts in his third issue that no evidence supports the jury's damage award, and in his fourth issue, he contends the trial court erred in

failing to require Ganim to identify in his pleadings the maximum amount of damages sought. He argues in his fifth issue that the trial court erred in its selection of testimony that, in response to a jury question, it allowed the jury to rehear.

contract's enforceability is not determined by the type of damages one party chooses to seek for its breach. *See Nagle v. Nagle,* 633 S.W.2d 796, 801 (Tex.1982) (claim for breach of oral contract to convey real property barred by statute of frauds, even though plaintiff sought money damages for "loss of bargain" rather than specific performance). The question of whether the statute of frauds applies is a matter of law, not a matter of pleading. *See Haase v. Glazner,* 62 S.W.3d 795, 799 (Tex.2001) (holding if a bargain is unenforceable under the statute of frauds, a party cannot circumvent the statute by recasting his argument and seeking benefit-of-the-bargain damages).[5]

■ Ganim also insists that no additional conveyance was required for the partnership to own an interest in the land, because the partnership acquired equitable title to the Property when Alattar purchased legal title to it. Thus, according to Ganim, the partnership, acting through Alattar, purchased the Property. This argument focuses on whether the Property was sold under the agreement to the partnership acting through Alattar, or instead was sold to Alattar as trustee of an unidentified trust unrelated to the partnership. In either event, the agreement is one for the sale of real estate and subject to the statute of frauds.[6] *White v. McNeil,* 294 S.W. 928, 930 (Tex.Civ.App.-Fort Worth 1927, no writ) (explaining that the parties' intentions that property become a partnership asset "could make no difference" in the applicability of the statute of frauds).

Having concluded that the agreement is subject to the statute of frauds, we next consider whether the statute's requirements have been satisfied.

## B. Requirements of the Statute of Frauds

■ Alattar contends that the agreement found by the jury does not satisfy the statute of frauds because the writings do not incorporate or refer to each other or to the details of the alleged agreement, and several of the writings were not signed by him or his authorized representative. We agree. The signed documents are not sufficiently connected to any other documents that individually or collectively set forth the essential terms of the agreement alleged by Ganim to exist. A wealth of authority supports Alattar's argument that the six documents do not meet the requirements of the statute of frauds.

■ First, to meet the statute's requirements, a written memorandum must contain all essential terms. *Cohen v. McCutchin,* 565 S.W.2d 230, 232 (Tex.1978) ("[T]here must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony."); *BACM 2001–1 San Felipe Rd., L.P. v. Trafalgar Holdings I, Ltd.,* 218 S.W.3d 137, 144 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (same); *Walker Ave. Realty Co. v. Alaskan Fur Co.,* 131 S.W.2d 196, 198 (Tex.Civ.App.-Galveston 1939, writ ref'd) ("[T]he written memorandum or proposal must within itself or by reference to other writings, and without

---

5. We further note that in his live pleadings, Ganim requested specific performance.

6. In characterizing the issue as actually submitted, Ganim states, "The jury considered six documents to determine *whether an agreement existed* between Alattar and Ganim for

Alattar *to acquire* the 3,800 acres for the parties' partnership." (emphasis added). The phrase "to acquire the 3,800 acres" is simply another way of saying, "to purchase the real estate."

recourse to parol evidence, contain all the elements of a valid contract, including an identification of both the subject matter of the contract . . . and the parties to the contract.") (citations omitted); *accord, Dobson v. Metro Label Corp.,* 786 S.W.2d 63, 65 (Tex.App.-Dallas 1990, no writ).

Second, if the written memorandum consists of multiple documents, the later documents must refer to the earlier ones. *See, e.g., Morrow v. Shotwell,* 477 S.W.2d 538, 539 (Tex.1972); *Owen v. Hendricks,* 433 S.W.2d 164, 166–67 (Tex.1968); *Taber v. Pettus Oil & Ref. Co.,* 139 Tex. 395, 399, 162 S.W.2d 959, 961 (1942); *Crowder v. Tri–C Res., Inc.,* 821 S.W.2d 393, 396 (Tex. App.-Houston [1st Dist.] 1991, no writ); *see also Boddy v. Gray,* 497 S.W.2d 600, 603 (Tex.Civ.App.-Amarillo 1973, writ ref'd n.r.e.) ("Although it contained the initials F.L.B. with 250,000 written on the same line, we do not consider that such notation is sufficient reference to incorporate the loan application to the Federal Land Bank into the first memorandum."); *Gruss v. Cummins,* 329 S.W.2d 496, 500 (Tex.Civ. App.-El Paso 1959, writ ref'd n.r.e.) ("What is necessary, then, is that a writing, so signed by the person to be charged, refer to all writings not so signed that are sought to be made a part of the memorandum."). "Oral evidence can only bring together the different writings. It cannot connect them. They must show their connection by their own contents. The connection must be apparent from a comparison of the writings themselves." *Douglass v. Tex.-Canadian Oil Corp.,* 141 Tex. 506, 509, 174 S.W.2d 730, 731 (1943); *see also Gruss,* 329 S.W.2d at 502 (stating that "parol evidence is not admissible to show that even signed writings relate to the same transaction").

Third, the documents referred to must be in existence. *Jones v. Kelley,* 614 S.W.2d 95, 99 (Tex.1981) (stating that a writing must "furnish within itself or by reference to other identified writings *then in existence,* the means or data by which the particular land to be conveyed may be identified with specific certainty") (emphasis added); *Boddy,* 497 S.W.2d at 603 (holding that a document not yet in existence cannot be included by incorporation).

Fourth, the memorandum must be signed by the party to be charged or by that party's authorized representative. Tex. Bus. & Com.Code Ann. § 26.01(a)(2); *Biko v. Siemens Corp.,* 246 S.W.3d 148, 159 (Tex.App.-Dallas 2007, pet. denied) (holding claim barred by the statute of frauds because, *inter alia,* "[m]ost of the documents appellants rely upon are not signed by the parties they seek to charge"); *Gruss,* 329 S.W.2d at 500.

The six documents the jury found to constitute the parties' agreement do not fulfill the statute's requirements. To illustrate why this is so, it is helpful to examine them in chronological order.

## C. Comparison of the Documents' Contents to the Statute's Requirements

The earliest of the writings on which Ganim relies is the Purchase Agreement. Because the other documents were not yet in existence, the Purchase Agreement does not incorporate them by reference. Moreover, it contains no mention of Ganim or a proposed Alattar–Ganim partnership, and does not identify the name or beneficiaries of the trust Alattar represented.

The next document executed was the Letter of Intent in which Alattar and Ganim memorialized their plan to form a partnership. Although this writing was finalized after Alattar executed the Purchase Agreement in Ganim's presence, it contains no reference to the Purchase Agreement, the Property, a trust, a trustee, or a trust beneficiary. The letter

addresses future sales of property by the proposed partnership, but contains no mention of any purchase of property by Alattar, Ganim, or the partnership. The parties expressed no intent in the letter as to whether property was to be conveyed or contributed to the future partnership by Alattar, Ganim, or a third party. This document cannot properly be considered as part of the "written memorandum" because no other document signed by Alattar or Alattar's authorized representative refers to it or adopts it. Moreover, it is a proposal,[7] and the two-member partnership it describes is not the same as the three-member partnership that Alattar and Ganim actually entered.

The third document in the series is the Unsigned Letter. In this letter from attorney Noonan to Alattar, Noonan refers to the Purchase Agreement, but does not mention Ganim, the Letter of Intent, a proposed Alattar–Ganim partnership, a trust, or a trust beneficiary. Like the Letter of Intent, this document cannot properly be considered as part of a written memorandum under the statute of frauds because no document signed by Alattar or his authorized representative refers to it or adopts it.

The next document in the chronology is the signed Cover Letter from Noonan to Alattar. In this letter, Noonan wrote that he enclosed several documents pertaining to the creation of Alattar Interests, LLC, an organization wholly owned by Alattar that serves as the general partner in the limited partnership of Gates Bluebonnet Hills, Ltd. Noonan also enclosed documents creating Gates Bluebonnet Hills, Ltd., the entity in which Alattar and Gan-

im became limited partners. But in the Cover Letter, Noonan does not refer to the Property, the Purchase Agreement, the Letter of Intent, a trust, a trustee, a trust beneficiary, or his own earlier Unsigned Letter.

The Partnership Agreement is the fifth document on which Ganim relies. In this agreement, Alattar and Ganim do not refer to the Property, the Purchase Agreement, the Letter of Intent, a trust, a trustee, a trust beneficiary, the Unsigned Letter, or the Cover Letter.

Lastly, Ganim relies on the Deed by which Alattar acquired the Property. The Deed is not signed by Alattar or his representative, and it contains no mention of the Purchase Agreement, the Letter of Intent, the Unsigned Letter, the Cover Letter, Ganim, the Alattar–Ganim partnership, or the Partnership Agreement. Like the Purchase Agreement, the Deed does not identify the trust or trust beneficiaries for whom Alattar purchased the Property.

■ This collection of documents falls short of the requirements imposed by the statute of frauds. Although Ganim attempts to link the documents using parol evidence, inference, or their proximity in time, such approaches cannot be reconciled with firmly-entrenched precedent. See, e.g., U.S. Enters., Inc. v. Dauley, 535 S.W.2d 623, 628 (Tex.1976) ("[P]arol must not constitute the framework or skeleton of the agreement. That must be contained in the writing." (quoting Wilson v. Fisher, 144 Tex. 53, 57, 188 S.W.2d 150, 152 (1945))); Morrow, 477 S.W.2d at 540–41 (holding that the requirement of a

---

7. "Under Texas law, a writing that contemplates a contract or promise to be made in the future does not satisfy the requirements of the statute of frauds." Hartford Fire Ins. Co. v. C. Springs 300, Ltd., 287 S.W.3d 771, 778 (Tex. App.-Houston [1st Dist.] 2009, pet. denied).

"Writings that contain 'futuristic' language are insufficient to confirm that a contract or promise is already in existence." Id.; Martco, Inc. v. Doran Chevrolet, Inc., 632 S.W.2d 927, 928–29 (Tex.App.-Dallas 1982, no writ) (same).

written memorandum was not satisfied even though the record demonstrated the parties' knowledge and intent, and the property's location and boundaries were identified on a plat made from extrinsic evidence); *Owen*, 433 S.W.2d at 167 ("The only permissible extension 'of the doctrine requiring an express reference in the signed paper is where the signed paper at the time of the signature can be shown from its contents to be based on an adoption of a then[-]existing unsigned paper.'" (quoting 4 WILLISTON ON CONTRACTS § 582 (3rd ed.1961))); *Hereford v. Tilson*, 145 Tex. 600, 605, 200 S.W.2d 985, 988 (1947) ("We are definitely committed to the proposition that the essential elements of such a contract [for the sale of real estate] may never be supplied by parol evidence.").

In support of his argument that the writings satisfy the statute of frauds, Ganim relies solely on the cases of *Adams v. Abbott*, 151 Tex. 601, 254 S.W.2d 78 (1952) and *Jones v. Smith*, 231 S.W.2d 1003 (Tex. Civ.App.-Austin 1950, writ ref'd n.r.e.). These cases refer to a narrow exception, inapplicable in this case, that permits the identification of property in a written memorandum to be clarified using extrinsic evidence. As the Texas Supreme Court explained the exception, "where the land referred to in the writing is all the land the party to be charged owns in a given locality, it is sufficient to describe it in such general terms as 'a certain tract of land, being my own headright, lying on Rush Creek, in the cross timbers....'" *Hereford*, 145 Tex. at 605, 200 S.W.2d at

988 (quoting *Fulton v. Robinson*, 55 Tex. 401 (1881)); *accord, Pickett v. Bishop*, 148 Tex. 207, 210, 223 S.W.2d 222, 223 (1949). This exception applied in *Adams*, in which a property owner asked a resident of Collin County, Texas "to assist her 'in the sale of my little farm out there,'" and extrinsic evidence demonstrated that she "owned no land in Texas other than the Collin County farm." *Adams*, 151 Tex. at 603–04, 254 S.W.2d at 79. The rule also applied in *Jones*, in which a seller gave a broker written authorization "to sell 'my ranch of 2200 acres,' and testified that he did not own any ranch anywhere in Texas or elsewhere other than the 2200 acres" described in the listing contract. *Jones*, 231 S.W.2d at 1004. These cases have no application here. It has never been contended that any document signed by or on behalf of Alattar, or incorporated by reference into such a signed document, expresses Alattar's intent to convey to the partnership the only real property he owns of a particular size or in a particular location.

In sum, the six documents on which Ganim relied at trial do not constitute a signed, written memorandum setting forth the essential terms of the agreement Ganim alleged. *See Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 835 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (holding that, taken together, a letter of intent, a listing of materials and prices, and an unsigned cover letter do not satisfy the statute of frauds). Because the agreement the jury found to exist does not comply with the statute of frauds, it is unenforceable.[8]

---

8. Alattar alternatively relies on a similar, but more stringent provision in the Texas Trust Code. The Trust Code analog to the statute of frauds applies only to an express trust and not to a resulting trust, a constructive trust, a business trust, or a security instrument. TEX. PROP.CODE ANN. § 111.003 (Vernon 2007). This section provides that "[a] trust in [real

property] is enforceable only if there is written evidence of the trust's terms bearing the signature of the settlor or the settlor's authorized agent." It is not necessary to determine whether the more rigorous Texas Trust Code provision also applies, because even if it does, then that statute's requirements also are unmet. Ganim offered no written evidence of

### IV. Conclusion

Because the claim on which the trial court rendered judgment is barred by the statute of frauds, we sustain Alattar's first issue,[9] reverse the trial court's judgment, and render judgment that appellee Ganim take nothing.

the terms of a trust to which the Alattar–Ganim partnership was a beneficiary.

9. Because Alattar's first issue is dispositive, we do not reach his remaining issues.