**Affirmed and Memorandum Opinion filed February 2, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00331-CV
_____

### ASLAM VIRANI, Appellant

### V.

### PAT CUNNINGHAM, Appellee

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 07-CV-1407**

## MEMORANDUM OPINION

This is the second appeal involving an alleged agreement by Pat Cunningham to sell Aslam Virani a plot of land in the Marina Del Sol Subdivision. In Virani's earlier interlocutory appeal, we affirmed the trial court's denial of Virani's motion to compel Cunningham to arbitrate under a settlement agreement between the Marina Del Sol Subdivision Homeowners' Association ("the Association") and Virani. Our decision was based on the trial court's implied finding that Pat Cunningham, the president of the Association, signed the settlement agreement in his representative rather than individual

capacity. After our decision, the trial court granted Cunningham's motion for summary judgment, and Virani appeals. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

We discussed the factual background of this case in Virani's earlier appeal. *See Virani v. Cunningham*, No. 14-08-01166-CV, 2009 WL 2568349, at *1 (Tex. App.—Houston [14th Dist.] Aug. 20, 2009, pet. denied) (mem. op.) ("*Virani I*"). Briefly, the Association sued Virani in 2003 for alleged deed-restriction violations. At that time, Cunningham was the Association's president and a member of its board. Following mediation, the Association and Virani entered into a settlement agreement. Under the terms of the agreement, Virani agreed to reduce the size of his existing pier within six months or petition for amendment of the Association's restrictions. The agreement provided that Cunningham would sell to Virani an adjacent subdivision lot for $290,000, with the closing to occur within sixty days of execution of the agreement. The agreement was signed by Cunningham, two other Association board members, the Association's attorney, Virani, and Virani's attorney. Cunningham signed his name, and underneath his signature appear the typewritten words "Pat Cunningham, President and Board Member Marina Del Sol Subdivision Homeowners['] Association." The agreement contains a clause requiring arbitration of "any future disputes by and between [the parties] . . . ."

On December 6, 2007, Virani sued Cunningham individually, alleging that Cunningham breached the settlement agreement by failing to convey title to the adjacent lot to Virani. Virani sought damages or, alternatively, specific performance of the agreement. On July 30, 2008, Virani filed a Plea in Abatement and Motion to Compel Arbitration. The trial court held a hearing, at which Cunningham testified that he had signed the settlement agreement on behalf of the homeowners' association. The trial court denied Virani's plea and motion, and we affirmed the rulings. *See id.*, 2009 WL 2568349, at *5. We held that "[i]n denying Virani's plea and motion, the [trial] court made an implied finding that Cunningham signed the agreement in his representative

2

capacity . . ." and could not be compelled to arbitrate. *Id.*, 2009 WL 2568349, at \*4. Applying a no-evidence standard of review, we concluded that there was some evidence that Cunningham intended to sign the agreement only in his capacity as association president and board member and the trial court therefore did not err in denying Virani's plea and motion. *Id.*, 2009 WL 2568349, at \*5.

On remand, Virani amended his petition to add equitable estoppel and promissory estoppel as bases for relief. Cunningham moved for traditional and no-evidence summary judgment. Cunningham argued that, based on our decision in *Virani I*, he could not be held individually liable under the settlement agreement. He also argued that the settlement agreement was unenforceable against him under the statute of frauds because he had not signed it in his individual capacity. Finally, Cunningham contended that there was no evidence to support several elements of Virani's estoppel arguments. Specifically, he argued, Virani had failed to show that Virani had paid consideration for, taken possession of, or made improvements to the property. In response, Virani presented an affidavit in which he attested that Cunningham "clearly took action and made representations that we were indeed moving forward toward closing and that a contract existed between the parties . . . ." Virani further stated that he "always believed that [he] was in a contract with Mr. Cunningham." Virani also produced transcripts of a deposition in which Cunningham testified that he understood when he signed the settlement agreement that he was to sell his lot to Virani. However, in the same deposition, Cunningham testified that he had signed the agreement in his capacity as president of the Association. Finally, Virani produced two letters from his attorney to Cunningham's counsel, complaining that Cunningham had not responded to Virani's request to close on the lot. At the bottom of one of these letters, by his own admission, Cunningham wrote by hand that he "would be happy to close on the lot on Monday[, January] 26th[, 2004]." He added that he would not close if the closing statement failed to reflect certain taxes and fees The original copy of this note apparently contained Cunningham's signature, and Cunningham testified at his deposition that he wrote and signed the note. However, the

3

copy of this note in evidence does not contain a signature. The trial court granted Cunningham's motion for summary judgment on March 4, 2011 without specifying the grounds for its ruling.

## II. ISSUES PRESENTED

Virani first argues that the trial court erred in granting summary judgment on Cunningham's statute of frauds defense because the settlement agreement, on its own or combined with Virani's attorney's letter and Cunningham's handwritten note, satisfies the requirement of an agreement in writing. Virani also contends that the trial court should not have granted summary judgment because Virani raised a genuine issue of material fact in support of his estoppel arguments. In his second issue, Virani argues that the trial court erred in granting summary judgment because our decision in *Virani I* did not foreclose recovery under the settlement agreement itself or under his estoppel theories. In his final three issues, Virani contends that summary judgment was inappropriate to the extent it was based on the law of the case doctrine. He contends that (a) our decision in *Virani I* did not become the law of the case because, as an intermediate appellate court, we are not a "court of last resort," and the Texas Supreme Court did not affirm our decision; (b) our holding in *Virani I* as to capacity was one of fact rather than law; and (c) the facts substantially changed between the time we rendered our decision in *Virani I* and the time the trial court granted summary judgment, precluding application of the law of the case doctrine.

## III. STANDARD OF REVIEW

We review the trial court's grant of a summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 198 S.W.3d 211, 215 (Tex. 2003). We consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We must affirm the summary judgment if any of the movant's theories

4

presented to the trial court and preserved for appellate review are meritorious. *Provident Life*, 128 S.W.3d at 216.

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who moves for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The nonmovant has no burden to respond to a traditional summary-judgment motion unless the movant conclusively establishes each element of its cause of action as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999).

In a no-evidence motion for summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks*, 206 S.W.3d at 582. We review the evidence presented by the motion and response in the light most favorable to the nonmovant, crediting evidence favorable to that party if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror could not. *Id.* (citing *City of Keller*, 168 S.W.3d at 827 and *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)). We sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is

barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller,* 168 S.W.3d at 810. The evidence is insufficient if "it is 'so weak as to do no more than create a mere surmise or suspicion'" that the challenged fact exists. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009) (quoting *Kroger Tex. L.P. v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006)).

When, as here, the movant asserts multiple grounds for summary judgment and the trial court grants summary judgment without specifying the grounds for its ruling, we must affirm the judgment if any of the grounds is meritorious. *Carr v. Brasher*, 775 S.W.2d 567, 570 (Tex. 1989); *Chrimson v. Brown*, 246 S.W.3d 102, 106 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

## IV. ANALYSIS

### A. Statute of Frauds

Virani first argues that the trial court erred in granting summary judgment on Cunningham's statute of frauds defense. Under the statute of frauds, a contract for the sale of real estate is not enforceable unless the promise or agreement, or a memorandum of it, is in writing and signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him. TEX. BUS. & COM. CODE ANN. § 26.01 (West 2009). An agreement is not "signed by the person to be charged" if the defendant signed the agreement in one capacity and is charged with it in another capacity. *See FCLT Loans, L.P. v. Estate of Bracher*, 93 S.W.3d 469, 476–77 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (where note was signed by decedent, defendants who were sued individually and as co-executors of the estate were entitled to summary judgment as to individual liability).

Virani argues that the settlement agreement satisfies the statute of frauds because

Cunningham signed it. But in *Virani I*, we affirmed the trial court's implied finding that Cunningham did not sign the settlement agreement in his individual capacity. On remand, Virani produced no evidence that the facts relevant to that determination had changed. As a matter of law, therefore, Cunningham showed that the settlement agreement was not "signed by the person to be charged with the promise" as required under the statute of frauds. *See FCLT Loans*, 93 S.W.3d at 476–77.

Although the settlement agreement alone does not satisfy the statute of frauds, Virani argues that a combination of the settlement agreement, Virani's attorney's letters to Cunningham, and Cunningham's handwritten note on one of them does. To satisfy the statute of frauds, there must be a written memorandum that is complete within itself in every material detail and contains all of the essential elements of the agreement. *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978). If the written memorandum consists of multiple documents, the later documents must refer to the earlier ones. *Alattar v. Ganim*, 14-08-00756-CV, 2010 WL 547032, at *5 (Tex. App.—Houston [14th Dist.] Feb. 18, 2010), *rev'd on other grounds*, 54 Tex. Sup. Ct. J. 1260 (June 24, 2011) (per curiam). Oral evidence can only bring together the different writings; it cannot connect them. *Id.* (citing *Douglass v. Tex.–Canadian Oil Corp.*, 141 Tex. 506, 509, 174 S.W.2d 730, 731 (1943). The documents must show their connection by their own contents. *Id.*; *see Gruss v. Cummins*, 329 S.W.2d 496, 500 (Tex. Civ. App.—El Paso 1959, writ ref'd n.r.e.) ("Parol evidence is not admissible to show that even signed writings relate to the same transaction."). For an unsigned document to be part of a written memorandum, it must be referred to or adopted by a signed document. *See id.*, 2010 WL 547032, at *6 ("This document cannot properly be considered as part of the 'written memorandum' because no other document signed by Alattar or Alattar's authorized representative refers to it or adopts it.").

Cunningham admitted that he wrote and signed a note on the bottom of one of the letters in which he stated that he would be happy to close on the lot, but that he would not

7

do so if the closing document did not reflect certain changes. This statement, however, never refers to the settlement agreement, nor does it necessarily acknowledge any existing obligation. *See id.*, 2010 WL 547032, at \*6 n.7 ("'Writings that contain "futuristic" language are insufficient to confirm that a contract or promise is already in existence.'") (quoting *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 778 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)). Further, in the letter itself, Virani's attorney stated that "the settlement agreement is hereby declared breached." It would be illogical to read Cunningham's note as an acknowledgement that he was individually bound under an agreement Virani's attorney had just declared breached. Finally, there is no evidence that the changes Cunningham requested were ever made, or even that a closing statement was prepared. Because Cunningham did not sign any agreement binding him individually, the trial court correctly granted summary judgment on statute of frauds grounds. We therefore overrule Virani's first issue as it pertains to Cunningham's statute of frauds defense.

## B. Equitable Estoppel

Virani next argues that the trial court erred in granting summary judgment because Virani raised a genuine issue of material fact in support of equitable estoppel. In his summary-judgment response, Virani cited Cunningham's admissions that Cunningham signed the settlement agreement, that Cunningham knew Virani was prepared to purchase the lot, and that Cunningham intended to sell the lot to Virani. Virani also contends, in his second issue, that our decision in *Virani I* did not bar recovery under an equitable estoppel theory because we did not address such a theory on his first appeal.

Equitable estoppel is a defensive plea raised to prevent a party from insisting upon its strict legal rights under the statute of frauds, when enforcing an oral agreement would be necessary to avoid an injustice. *See Nat'l Resort Comtys., Inc. v. Cain*, 479 S.W.2d 341 (Tex. Civ. App.—Austin 1972, writ ref'd n.r.e.) ("By whatever name the equitable plea of the vendee may be called, whether promissory estoppel, equitable estoppel, or estoppel In

8

pais, it is a plea raised to estop the vendor from interposing the Statute of Frauds in an effort to avoid passage of the fee."). When a defendant establishes the elements of his statute of frauds defense as a matter of law, the burden shifts to the plaintiff to adduce evidence in support of an estoppel defense. *See Moore Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–37 (Tex. 1973) (so holding as to promissory estoppel). To enforce an oral contract for the purchase of real property on the basis of equitable estoppel, a purchaser must show that he paid consideration and took possession of the property. *Boyert v. Tauber*, 834 S.W.2d 60, 63 (Tex. 1992). In addition, the purchaser must show either that he made permanent and valuable improvements on the property with the seller's consent, or that the transaction would be a fraud on the purchaser if the oral contract was not enforced. *Id.* (citing *Hooks v. Bridgewater*, 111 Tex. 122, 126–27, 229 S.W.2d 1114, 1116–117 (1921)). *See also Nagle v. Nagle*, 633 S.W.2d 796, 799, 800 (Tex. 1982) ("The exception to the Statute of Frauds announced in *Hooks v. Bridgewater* was to prevent actual [common-law] fraud."). In his summary-judgment response, Virani conceded that he had failed to pay consideration or take possession of the property. His equitable estoppel argument therefore fails as a matter of law. This determination rests not on our decision in *Virani I* but on Virani's failure to create a fact issue about the elements of equitable estoppel. We therefore overrule Virani's first and second issues as they pertain to equitable estoppel.

## C.    Promissory Estoppel

Virani next argues that the trial court erred in granting summary judgment because he raised a genuine issue of material fact in support of his promissory estoppel theory. In support of his promissory estoppel theory, Virani relies on the evidence he presented that Cunningham knew about the agreement and intended to sell Virani the land, and that Virani thought they had formed a contract. As with his equitable estoppel argument, Virani also contends that our decision in *Virani I* did not bar recovery under a promissory estoppel theory because we did not address the issue in that case.

9

Under the doctrine of promissory estoppel, courts will enforce an oral promise to sign an instrument complying with the statute of frauds if: (1) the promisor should have expected that his promise would lead the promisee to some definite and substantial injury, (2) such an injury occurred, and (3) the court must enforce the promise to avoid injustice. *Nagle*, 633 S.W.2d at 800 (citing *Moore Burger*, 492 S.W.2d at 934. In his summary-judgment response, Virani failed to show that he suffered injury because of Cunningham's promise. Virani's promissory estoppel theory therefore fails as a matter of law, regardless of our decision in *Virani I*. We overrule Virani's first and second issues as they pertain to promissory estoppel.

**D.    Law of the Case Arguments**

In his final four issues, Virani argues that the trial court erred in granting summary judgment because the law of the case doctrine did not bar his claims. Under the law of the case doctrine, questions of law decided on appeal to a court of last resort govern the case throughout its subsequent stages. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). A reviewing court may apply the law of the case doctrine in a subsequent proceeding if the facts in the later proceeding are "so nearly the same that they do not materially alter the legal issues involved in the later proceeding." *Lawrence v. City of Wichita Falls*, 122 S.W.3d 322, 326 (Tex. App.—Fort Worth 2003, pet. denied). By narrowing the issues in successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency. *Hudson*, 711 S.W.2d at 630. The doctrine is based on public policy and is aimed at putting an end to litigation. *Id.* (citing *Barrows v. Ezer*, 624 S.W.2d 613, 617 (Tex. App.—Houston [14th Dist.] 1981, no writ). It applies only to questions of law, and it does not necessarily apply when either the issues or the facts presented at successive appeals are not substantially the same as those involved in the first trial. *Id.* (citing *Barrows*, 624 S.W.2d at 617 and *Ralph Williams Gulfgate Chrysler Plymouth, Inc. v. State*, 466 S.W.2d 639, 640–41 (Tex. Civ. App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.)). Thus, when

parties have amended pleadings on remand, the issues or facts may change so that the law of the case no longer applies. *Id.* (citing *Rose v. Parker*, 143 Tex. 202, 210, 183 S.W.2d 438, 442 (1944)). The decision to revisit a previous holding is left to the discretion of the court under the particular circumstances of each case. *City of Houston v. Jackson*, 192 S.W.3d 764, 769 (Tex. 2006).

Virani first argues that in *Virani I*, we addressed only the settlement agreement's arbitration clause and not whether Cunningham is bound as a signatory to the settlement agreement as a whole. But while the issue in *Virani I* was the arbitration clause, our decision was based on the trial court's implied finding that Cunningham did not sign the settlement agreement individually. *See Virani I*, 2009 WL 2568349, at *5. If Cunningham did not sign the settlement agreement individually, then he is not individually bound as a signatory. *See Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006) (a party cannot be held not individually liable under a contract the party signed in representative capacity). Virani presented no new facts that would alter our previous holding or make the law of the case inapplicable. We therefore overrule Virani's second issue as it pertains to Cunningham's individual liability under the settlement agreement.

In his third issue, Virani contends that the trial court erred in granting summary judgment because, as an intermediate appellate court, we are not a "court of last resort" for the purpose of the law of the case doctrine. However, intermediate appellate courts have consistently treated their own prior decisions, and those of their sister courts, as binding under the law of the case doctrine. *See, e.g.*, *Barrows*, 624 S.W.2d at 617 (treating prior decision of own court as law of the case); *Ralph Williams*, 466 S.W.2d at 640 (treating prior decision of sister court as law of the case. We overrule Virani's third issue.

Virani next contends that the trial court erred in granting summary judgment based on our holding in *Virani I* because the facts substantially changed between the time we rendered that decision and the time that the trial court granted summary judgment. Virani cites his own affidavit and Cunningham's deposition testimony, both of which he

11

presented after our decision in *Virani I*. But Virani himself notes that "[t]hese additional facts relate to promissory and equitable estoppel" and have no effect on the issues that were dispositive in *Virani I*. We overrule Virani's fourth issue.

Finally, Virani argues that the trial court erred in rendering summary judgment based on our capacity determination in *Virani I* because the capacity in which Cunningham signed the settlement agreement is a question of fact, to which the law of the case doctrine does not apply. But as long as the facts remain so nearly the same that they do not materially alter the legal issues involved, our earlier determination remains the law of the case.[1] *See Hudson*, 711 S.W.2d at 630; *Lawrence*, 122 S.W.3d at 326. We overrule Virani's fifth issue.

## V. CONCLUSION

We hold that Cunningham established each element of his statute of frauds defense

---

[1] Virani notes that "[o]n review of an order denying [a] Motion to Compel Arbitration, the appellate court would have been limited in [its] consideration of issues and facts." It is true that a motion to compel or stay arbitration may be granted without an evidentiary hearing, so the evidence may not always be fully developed when a court of appeals affirms or denies an order on such a motion on interlocutory appeal. *See In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 896 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding) (trial court is not required to hold evidentiary hearing on motion to compel arbitration). There may be cases in which, after a trial on the merits, the appellate court's prior holding may no longer apply as the law of the case. *See Marin Real Estate Partners, L.P. v. Vogt*, No. 04-10-00602-CV, 2011 WL 5869520, at *8 (Tex. App.—San Antonio Nov. 23, 2011, no pet. h.) (affirming a permanent injunction three years after reversing a temporary injunction on interlocutory appeal because "circumstances could have changed or the Vogts could have presented different or more compelling evidence in 2009 than they did in 2006."); *In re B.G.D.*, 351 S.W.3d 131, 142 (Tex. App.—San Antonio 2011, no pet.) ("To determine if we should apply the law of the case doctrine, we must compare the evidence from the 2005 temporary orders hearing . . . and the evidence from the 2009 trial on the merits."); *Med. Ctr. Bank v. Fleetwood*, 854 S.W.2d 278 (Tex. App.—Austin 1993, writ denied) ("'Where there has been a reversal of a summary judgment in favor of a Defendant and then a trial on the merits with an appeal, the law as stated in the summary judgment [appeal] does not necessarily control the case on the appeal from the trial on the merits.'") (quoting *Allstate Ins. Co. v. Smith*, 471 S.W.2d 620, 623 (Tex. Civ. App.—El Paso 1971, no writ)). Federal courts have expressly recognized an exception to the law of the case doctrine when a subsequent trial produces substantially different evidence. *See, e.g.*, *EEOC v. Int'l Longshoremen's Ass'n*, 623 F.2d 1054, 1058 (5th Cir. 1980). In this case, however, the trial court held a full evidentiary hearing on Virani's motion. It viewed the signature block of the settlement agreement and heard Cunningham testify that he signed the settlement agreement in his representative capacity, and Virani has presented no new evidence relevant to this issue.

as a matter of law, that Virani failed to raise a genuine issue of material fact in support of his estoppel arguments, and that our decision in *Virani I* operates as the law of the case. Accordingly, we affirm the trial court's judgment.


/s/    Tracy Christopher
        Justice


Panel consists of Chief Justice Hedges and Justices Brown and Christopher.